*Insolvency.   Attachment.   Prosecution of Action.   R. S., c. 70, § § 33, 34, 52; c. 73, § 8.   Gen. Stat. Mass. c. 118, § 44.*

Sections 33 and 34 of the Insolvent Law (R. S., c. 70) are to be interpreted so as to give a field of operation to each, and construed with reference to the established principle that an assignee in insolvency stands in the place of the insolvent debtor, and takes only the property which he had subject to all valid liens and equities.

Under § 34, an assignee is not entitled to prosecute an action to final judgment in order to preserve, for the benefit of all creditors, an attachment made within four months before the commencement of proceedings in insolvency, as against a mortgage given before such attachment, more than four months before the commencement of such proceedings, and recorded more than three months before the filing of the petition in insolvency but not until after the record of the attachment.

In such case, the general creditors are only entitled to the property subject to the mortgage.

AGREED STATEMENT.

The defendant having been adjudged an insolvent, his assignee appeared and asked leave to prosecute this action for the benefit of the general body of creditors.

The case is stated in the opinion.

*Thompson and Dunton*, for assignee.
*W. H. Fogler*, for defendant.

WHITEHOUSE, J.   This is an action of assumpsit on two promissory notes, dated April 21, 1884, one for two hundred dollars and the other for thirty dollars, signed by the defendant and payable to the order of the plaintiff.   The action was commenced November 16, 1889, and an attachment of the defendant's real estate made and recorded the same day.

December 17, 1888, the defendant mortgaged the same real estate to secure payment of two notes amounting to five hundred and fifty dollars, but the mortgage was not recorded until November 25, 1889.

March 10, 1890, the defendant was adjudged an insolvent debtor on his own petition filed the same day, and April 9, 1890,

an assignee was duly appointed and the defendant's property assigned to him. The plaintiff proved the claim in this suit against the estate of the defendant in insolvency, but no dividend was paid.

October 15, 1890, a discharge in insolvency was granted to the defendant and is duly pleaded in defense of this action.

At the October term of this court held in Waldo county in 1890, the assignee entered his appearance on the docket and asked to be admitted to prosecute the action to final judgment in order to render the attachment available for the benefit of the estate of the insolvent by virtue of section 34, chapter 70, Revised Statutes.

The case comes before the court on an agreed statement of facts ; and the question presented for determination is whether the application of the assignee to be admitted to prosecute the suit for the benefit of all the creditors shall be granted or refused.

It is now well recognized and familiar doctrine that in the absence of fraud the assignee in insolvency stands in the place of the insolvent debtor, and takes only the property which he had, subject to all valid claims, liens and equities. *Hutchinson* v. *Murchie,* 74 Maine, 187 ; *Deering* v. *Cobb, Id.* 332 ; *Herrick* v. *Marshall,* 66 Maine, 432, and cases cited. He has only the insolvent's interest in the property and no right or title to the interest which other parties have in it, further than is expressly given to him by the insolvency laws to aid in the preservation of the estate for the benefit of the creditors. The "established rule," said Harlan, J., in *Yeatman* v. *Sav. Inst.* 95 U. S. 764, " is that, except in cases of attachment against the property of the bankrupt within a prescribed time preceding the commencement of proceedings in bankruptcy, and except in cases where the disposition of property by the bankrupt is declared by law to be fraudulent and void, the assignee takes the title subject to all equities, liens or incumbrances, whether created by operation of law or by the act of the bankrupt, which existed against the property in the hands of the bankrupt." See also *Stewart* v. *Platt,* 101 U. S. 731, and *Donaldson* v. *Farwell,* 93 U. S. 631.

Sections 33 and 34 of our insolvent law (Ch. 70, R. S.,) must be interpreted with reference to this well-settled rule, and construed, if practicable, so as to leave a clear and definite field of operation to each. Section 33 declares, without exception or qualification, that the assignment "dissolves any such attachment made within four months, and any such mortgage not recorded at least three months preceding the commencement" of insolvency proceedings. But § 34 provides that in case of such suit and attachment within four months, the assignee "may be admitted to prosecute such suit to final judgment or decree, and may in his own name levy upon or sell the property, effects or estate so attached in the same manner as the creditor might have done had no proceedings in insolvency been commenced, and such attachment and the proceeds of the property so attached shall be held for the benefit of the estate of such insolvent; . . . and such creditor may prove his debt or claim upon which such suit is brought, in the same manner as if a suit had not been commenced."

When the language of a single section, considered by itself, raises an apparent conflict or incongruity as compared with other portions of the statute, it is often necessary and proper to refer to other sections of the same statute and construe the several portions with reference to each other. "Possibly the most important purpose of the construction of all the parts of a statute together is that of giving, by the means of such comparison, a sensible and intelligent effect to each without permitting any one to nullify any other, and to harmonize every detailed provision of the statute with the general purpose or particular design which the whole is intended to subserve." Endlich on Int. of Stat. § § 40–41. In construing any part of a law the whole must be considered. The different parts reflect light upon each other, and it should be so expounded, if practicable, as to avoid any contradiction or inconsistency and give some effect to every part of it. Sedgwick on Stat. Const. 238 ; *Gray* v. *Co. Com.* 83 Maine, 429, and cases cited.

The obvious purpose of an insolvency law is to enforce an equal and impartial distribution of the property of insolvents among their creditors, with certain specified exceptions, and to

relieve honest debtors of their debts and contracts. In further-
ance of this object, § 33 provides for the dissolution of any
attachment made within four months in order to deprive the
attaching creditor of the exclusive benefit that he sought to
obtain from it, and to vest the title to the property in the
assignee for the benefit of all the creditors. Ordinarily this
result is fully secured when the attachment is dissolved, but it
frequently happens where subsequent purchases or other valid
liens have supervened, that the object of the statute would be
defeated by dissolving the attachment; the lien of the attaching
creditor being discharged, the property would pass to the sub-
sequent purchaser or creditor having a subsequent valid lien,
and not to the general creditors. The provisions of § 34, were
manifestly designed to remedy this difficulty. When it appears
to the court that the effect of dissolving such an attachment
may be that property which should pass to the assignee for the
benefit of the insolvent's estate would vest in subsequent pur-
chasers or creditors, whose rights were acquired subject to the
attachment, the assignee may be admitted to prosecute the suit
to final judgment, and " such attachment and the proceeds of
the property so attached shall be held for the benefit of the
estate of the insolvent." Thus construed there is no conflict
between the two sections, but there is scope for the operation
of each.

The two corresponding sections of the insolvent law of Massa-
chusetts are more explicit on this point and are harmonized by
their own express terms. Section 44, chapter 118, Gen. Stat.
Mass. (1860), declares that. the assignment shall " dissolve any
such attachment subject to the provisions of the following
section ;" and the following section provides that in case of a
subsequent conveyance by the debtor of the property attached,
or " if a dissolution of an attachment under the preceding section
might prevent the property attached from passing to the
assignee . . . the court . . . may, upon application
made on or before the day of holding the third meeting of the
creditors, . . order the lien created by the attachment to
continue. The action may be continued or execution stayed
until the assignee is chosen and takes charge of the action; and

the amount recovered, exclusive of costs due to the original plaintiff, shall vest in the assignee. (Pub. Stat. 1882, Ch. 157, § § 46–47.)· But it cannot be doubted that the general purpose sought to be accomplished is the same in both statutes.

It appears, however, that in Massachusetts prior to 1857 there was no limitation of time within which the order continuing the attachment might be made. " The result was that, in many cases where the attached property was claimed under a subsequent purchase or lien, the title to the property was uncertain and unsettled for an indefinite period of time." *Nelson* v. *Winchester*, 133 Mass. 437. To obviate this difficulty the provision above quoted was enacted, that the order continuing the attachment " shall be obtained or applied for on or before the day of holding the third meeting of creditors."

It will be preceived that in our statute there is no express limitation of time within which the assignee may be admitted to prosecute the suit to final judgment; but assuming, without deciding, that when deemed necessary for the fulfillment of the object of the insolvent law, as above stated, the assignee may be admitted, under § 34, to prosecute the suit to final judgment, and that the attachment may be thus preserved, even after a discharge has been granted to the insolvent, is there in the case at bar any interest in the mortgaged property beyond the equity of redemption, which should pass to the assignee for the benefit of the general creditors? We think not.

The mortgage in question was given nearly fifteen months before the commencement of the insolvency proceedings and eleven months before the date of the attachment. It was not fraudulent as against the creditors of the insolvent debtor. There is no suggestion that it was fraudulent in fact, and it was not made within four months before the filing of the petition with a view to give a preference to any creditor under § 52. It had been recorded more than three months before the filing of the petition and was not dissolved or discharged by the conveyance to the assignee under the provisions of § 33. It is not · impeachable upon any ground recognized by our insolvent laws. True, the mortgage was not recorded until after the plaintiff's attachment, and if there had been no insolvency proceeding the

plaintiff's lien would have taken precedence of the mortgage. But under our statute the mortgage was effectual against the mortgagee and his heirs without record. R. S., c. 73, § 8. The mortgagor was estopped to deny his deed as against the mortgagee. The assignee has no greater interest or better right than the insolvent himself could have asserted against the mortgagee. The law vests in him only the property which belonged to the debtor and not that which did not belong to him.

In *Smythe* v. *Sprague*, 149 Mass. 310, it was held that land conveyed by an insolvent debtor to a *bona fide* purchaser by a deed not recorded until after his assignment in insolvency, is not "property of the debtor" within the meaning of the insolvency law, and will not pass to his assignee. The court said: "Such a deed conveys the title to the grantee. A creditor of the grantor, without notice of the deed, may take the land on execution; but he has this right not because it is the property of the grantor, but because the grantee, in violation of our registry laws, has failed to record his deed, has thereby committed a constructive fraud upon the purchaser or creditor, and is therefore estopped to set up his title against him. The right of an attaching creditor is a personal right of estoppel against the grantee which enures to his own benefit solely and not to the benefit of other creditors. . . We do not think that such a personal right in a creditor of estoppel against a third person was intended to pass to the assignee, and to enure for his benefit."

By the dissolution of the attachment in the case before us, an incumbrance was removed from the property, and the debtor's right to redeem from the mortgage passed to the assignee for the benefit of all the creditors. They are entitled to no more. If they had desired a different result they could have seasonably filed a petition against the debtor and caused the mortgage as well as the attachment to be discharged. According to the agreement of the parties the entry must be,

*Application refused.*

PETERS, C. J., VIRGIN, LIBBEY, EMERY and FOSTER, JJ., concurred.