W. S. Libbey Company

*vs.*

Ernest H. Johnson,
State Tax Assessor

Androscoggin.   Opinion, February 3, 1953.

*Skelton & Mahon,*
*Frederick G. Tainter,* for plaintiff.

*Alexander A. LaFleur, Attorney General,*
*Boyd L. Bailey, Asst. Attorney General,*
*Miles P. Frye, Asst. Attorney General,* for State.

SITTING: MURCHIE, C. J., FELLOWS, MERRILL, NULTY, THAXTER, WILLIAMSON, JJ.

MURCHIE, C. J.   The plaintiff's appeal herein comes to this court on report, under an Agreed Statement of Facts, to which reference will be made when certain unusual features concerning the legislation it brings under review, and the mis-printing of that legislation in the session laws of 1951, have been noted.   The legislation is the Sales and Use Tax Law, R. S., Chap. 14-A, mis-printed in P. L., 1951, Chap. 250.   It was enacted by Legislative Document No. 1273 of the Ninety-Fifth Legislature, referred to hereafter as "L. D. 1273," but is not available in its original form anywhere in our printed laws or statutes, and never will be.

P. L., 1951, Chap. 250, Sec. 1, as printed, carries thirty-four sections which "shall be known and may be cited as the 'Sales and Use Tax Law.'"   This was the recital of L. D. 1273, where the first thirty-three were enacted, as emergency legislation, effective May 3, 1951, with a Section 34 that was repealed by Section 9 of P. & S. L., 1951, Chap. 213, referred to hereafter as the "State Tax Act."   It was therein ordered that the repealed section should not be printed "as a part of the session laws of 1951."   With the fact that it was not so printed, this court, of course, has no quarrel.   It is entirely within the competence of the Legislature to repeal legislation before it becomes effective, and direct the Director of Legislative Research, the official charged with the duty of printing our session laws, P. L., 1947, Chap. 392, to omit the printing of it.   Section 3 of the Sales and Use Tax Law provides that the tax imposed by its terms shall be applicable to sales made in this State

"on and after July 1, 1951," and the State Tax Act was enacted, as emergency legislation, prior to that time, on May 21, 1951. The Sales and Use Tax Law was in effect from May 3, 1951 to May 21, 1951 for the limited purpose, as its emergency preamble discloses, of authorizing the creation and organization of "an efficient administrative agency for the collection" of the taxes it was designed to impose.

The repealed section was not an essential part of the law, carrying nothing more than a declaration of policy with reference to state property taxation, which was to be effective only if sales taxes were collected under its provisions, and property in the unorganized area of the State could be subjected to a tax not applicable in our cities and towns. See *Opinion of the Justices*, 146 Me. 239, 80 A. (2nd) 421. It was after the justices of this court gave an advisory opinion against the constitutionality of such special taxation that the section was repealed. We quote it, to have it in print in a place more available than the single one where it may now be found, i.e., in the engrossed copy of L. D. 1273, in the office of the Secretary of State. In doing so, we include the section number and caption, for a reason that will be apparent when the section which replaced it, and is printed as part of P. L. 1951, Chap. 250, is quoted hereafter:

> "**Sec. 34. Elimination of state property tax.** In the event that the provisions of this chapter become effective for the purpose of collecting taxes as levied herein, there shall be no state property tax levied for the year 1952 and thereafter."

The new section, enacted in the State Tax Act, as noted, appears twice in the printed session laws of 1951, (1) in P. L., 1951, Chap. 250, where it very definitely does not belong, and (2) as Section 10 of the State Tax Act, wherein it was enacted, to further amend "Chapter 14-A of the re-

vised statutes," from which the original Section 34 had been deleted in the section preceding. The recital was that said chapter was amended by adding thereto a new section "to be numbered 34." We quote it from P. L., 1951, Chap. 250, emphasizing the identification of the State Tax Act, following the caption, as the source of its enactment. It is identical with Section 10 of the State Tax Act, except for that explanatory material:

"**Sec. 34. Tax is levy on consumer. P. & S. L., 1951, c. 213, §§ 9, 10.** The liability for, or the incidence of, the tax on tangible personal property provided by this chapter is hereby declared to be a levy on the consumer. The retailer shall add the amount of the tax on such property and may state the amount of the taxes separately from the price of such property on all price display signs, sales or delivery slips, bills and statements which advertise or indicate the price of such property. The provisions of this section shall in no way affect the method of collection of such taxes on such property as now provided by law."

For a reason which is not apparent, but is quite incomprehensible, to this court, the Director of Legislative Research read the "to be numbered 34" of Section 10 of the State Tax Act as a direction, or authorization, for printing it as such in P. L., 1951, Chap. 250, Sec. 1. We use the word "incomprehensible" because that Chapter, as printed, presents the only instance of which we are aware wherein a partial revision of a law has been printed in our session laws, and that one in the form of emergency legislation. The emergency preamble which was used for the State Tax Act recites facts applicable to nothing except state property taxation, which is the subject matter of the first eight of its twelve sections. Therein there are no factual recitals applicable to the amendments of other laws effected by Sections 9 to 12 thereof, inclusive. In striking contrast, the emergency preamble used for L. D. 1273 was entirely ap-

propriate, as this court declared in *Morris* v. *Goss,* 147 Me. 89, 83 A. (2nd) 556, to take the Sales and Use Tax Law, as enacted in Section 1 thereof, out of the operation of Article IV, Part Third, Section 16 of the Constitution, and would have accomplished the same result for the new Section 34 if that had been enacted as a part thereof. Reference to *Morris* v. *Goss, supra,* however, and its recognition that emergency preambles may present questions of law reviewable by this court, makes it apparent that neither the original Section 34 of L. D. 1273, the repeal thereof, nor the enactment of the new Section 34 would have been effective on approval of the acts in which they were carried if appropriately challenged. It is undoubted, however, under the principle declared in *Lemaire* v. *Crockett,* 116 Me. 263, 101 A. 302, that each and all of them became effective after the expiration of ninety days from the adjournment of the Legislature.

For the purposes of this case it is entirely immaterial whether the original Section 34 of the Sales and Use Tax Law ever became effective, or when the new one did. The latter became effective in any event after the lapse of the constitutional referendum period, on August 20, 1951. It is clearly part and parcel of the Sales and Use Tax Law, and was enacted for the express purpose of declaring the legislative intention underlying the enactment of that law in L. D. 1273. Decisions heretofore rendered in the construction of particular parts of it give full recognition to the principle of statutory construction which declares that legislative intention, when determinable, must be given effect. *Acheson* v. *Johnson,* 147 Me. 275, 86 A. (2nd) 628; *Coca-Cola Bottling Plants, Inc.* v. *Johnson,* 147 Me. 327, 87 A. (2nd) 667; *Hudson Pulp and Paper Corporation* v. *Johnson,* 147 Me. 444, 88 A. (2nd) 154; *Androscoggin Foundry Co.* v. *Johnson,* 147 Me. 452, 88 A. (2nd) 158. As was said in *Berry* v. *Clary,* 77 Me. 482, 1 A. 360, legislative intention is the "guiding star in the construction of every statute."

The issue presented by the plaintiff's appeal is accurately set forth in the Agreed Statement of Facts as whether it "is subject to assessment of taxes on sales made by it of less than twenty-five cents in amount." The facts set forth therein may be summarized as follows, all section references being to the Sales and Use Tax Law. The plaintiff is a manufacturer who is a "retailer," as that term is defined in Section 2, by reason of the sale of foods and beverages to its employees at the cafeteria in its plant for consumption on the premises. The defendant is the State Tax Assessor, the official charged with the duty of administering the law. The plaintiff, in a stated period, made such sales to its employees amounting to $3,329.39, and collected sales taxes thereon, under the provisions of Section 5, amounting to $38.43, which it remitted to the defendant when making a report showing a "total sale price," as required by Section 12, in the amount stated. The tax rate of two per cent, fixed by Section 3, would involve a tax of $66.59 on that gross. The plaintiff was assessed for a deficiency of $28.16, under the provisions of Section 18, whereupon it filed a petition for reconsideration of such assessment, under Section 29, and took the appeal which brings the case forward, under Section 30, when its petition was denied.

The plaintiff's claim that the Sales and Use Tax Law, as originally written in L. D. 1273, imposed no tax on retailers, and that the provisions of Sections 3, 5 and 14, declaring that they should pay such taxes, adding them to sales prices, and be liable therefor as for personal debts, were designed for no other purpose than to provide a "method of collection," is entirely untenable, as will be shown hereafter, and it may be said in passing, perhaps, that the very special reliance placed on the new Section 34 by its counsel discloses that it is the statement carried therein, that the tax is "a levy on the consumer," upon which all the claims made, in last analysis, are based.

The legislative intention to tax sales regardless of price is clearly apparent in the language of Section 3, which imposes a tax "on the value of all tangible personal property, sold at retail in this state" after the date heretofore named, except as otherwise provided in the law itself. The later provisions thereof, and of Section 10, which carries numerous exemptions, make no reference to sales prices, except in the one instance noted *infra*. Section 5 authorizes retailers to add taxes to sales prices in accordance with a schedule established therein, but in no case where a sale is made at 24c or less. The closing provision of Section 3 carries the only price recital and is in itself a complete answer to the claim that sales on which a retailer can collect no tax from a consumer under the Section 5 schedule are not intended to be taxed. It is there stated that:

> "No tax shall be imposed upon such property sold at retail for 10c or less, provided the retailer is primarily engaged in making such sales and keeps records satisfactory to the state tax assessor."

Construed in its entirety, as all statutes should be construed, *Sargent* v. *Inhabitants of Hampden*, 29 Me. 70; *Berry* v. *Clary, supra; Newbert* v. *Fletcher*, 84 Me. 408, 24 A. 889, L. D. 1273 makes the legislative intention entirely clear that all sales not specifically exempted shall be taxed, that retailers "shall pay" the taxes levied, Section 3, which shall be their "personal" debts to the state, Section 14, and that the consumer shall pay no more than the taxes retailers are authorized to add to sales prices by Section 5, which, as part of the price, "shall be a debt of the purchaser to the retailer until paid." There is no provision other than that carried in Section 4, applicable to use taxes only, which charges a consumer with the duty of paying a tax to the state. The tax payable to the state on each sale is computed from the sale price. It is only when such price is fifty cents or some multiple thereof that one who purchases from a

retailer pays that retailer the exact amount thereof. There can be no doubt that it was the retailer, and not the consumer, who was intended to be taxed by the Sales and Use Tax Law, as enacted in L. D. 1273, or that the retailer was vested with the limited right to pass the tax applicable to each particular sale along to his customer so far, and so far only, as the schedule of Section 5 permitted. The tax imposed upon a retailer, as Section 3 specifically declares, "shall be in addition to all other taxes" the retailer is required to pay.

This brings us to the provisions of the new Section 34. It has been quoted in full heretofore. Its essential provisions are carried in the opening and closing sentences, that the:

> "liability for, or the incidence of, the tax * * * is * * * a levy on the consumer"

and that its provisions, as a whole:

> "shall in no way effect the method of collection * * * as now provided by law."

Counsel for the plaintiff stresses the liability language, reading the word "or" as the equivalent of "and", and relying on the principle recognized in *Howard* v. *Bangor and Aroostook Railroad Co.*, 86 Me. 387, 29 A. 1101, that in cases of doubt and uncertainty:

> "the last words control all preceding words for the purpose of correcting any inconsistency of construction."

It is so stated, in effect, in Endlich on the Interpretation of Statutes, Sec. 183, quoted in the cited case, where one of the closing recitals is:

> "And it has been seen that a reading of the provisions of the whole statute * may give to earlier sections the effect of restricting the meaning of

later ones, as well as to the latter the effect of re-
stricting the operation of the former."

If the principle was to be applied literally, the closing re-
cital that the "method of collection" was not to be affected
would control the whole, and plaintiff would fail on such
ground, as it seems reasonably manifest was the legislative
intention. The words "and" and "or" are convertible in our
laws "as the sense of a statute may require," R. S., 1944,
Chap. 9, Sec. 21, I, it is true, and it would be possible within
that rule of construction to read the opening sentence of
the section as counsel for the plaintiff does, but it has been
recognized that the word "or" is sometimes used to give an
alternative description of something already identified,
*State* v. *Willis*, 78 Me. 70, 2 A. 848, *State* v. *Cushing*, 137
Me. 112, 15 A. (2nd) 740, and a recent decision of this
court declares that it is often used in the sense of "to wit."
*Hurd* v. *Maine Mutual Fire Insurance Co.*, 139 Me. 103, 27
A. (2nd) 918. If we read the recital the "liability for, or
the incidence of, the tax" as "the liability for, to wit, the
incidence of, the tax," we find the reason underlying the
amendment of the law by the addition of the new Section
34 clearly indicated in a statement made on the floor of the
House of Representatives by the Chairman of the Commit-
tee on Taxation, when the State Tax Act was reported there-
to. That statement was:

> "Since some question has arisen regarding the
> right of payers of the sales tax to deduct the same
> from federal income tax, a provision has been put
> into this bill to make it perfectly clear that the
> sales tax is a tax on the consumer so that the con-
> sumer can deduct it in computation of his income
> tax." Legislative Record, Page 2045.

The "incidence" of all taxes, in final analysis, falls on the
consumer, and it was clearly within the contemplation of
the Legislature when L. D. 1273 was enacted that such part
of the tax imposed by Section 3 as was added to selling

prices under the schedule established by Section 5 was to be paid to retailers making sales of tangible personal property by the purchasers thereof. That it was not contemplated that the exact amount of the tax should be so added was made apparent by authorizing the addition of the tax "or the average equivalent" thereof, as well as by the closing provision of Section 5, that:

> "Breakage under this section shall be retained by the retailer as compensation for the collection."

This provision carries clear implication that it was contemplated, generally, that retailers would collect more money in taxes under the provisions of Section 5 than would be required to meet the liability imposed upon them by Section 3, but it demonstrates even more clearly that there was no legislative intention, as the plaintiff argues, that retailers should remit the exact amount of their collections, neither more nor less.

Reference to P. L., 1949, Chap. 8 will disclose that the provisions of the new Section 34 are substantially identical with those added to our cigarette tax law, R. S., 1944, Chap. 14, Secs. 186 to 205, as amended, in the cited act, the purpose, then, being that stated by the chairman of the Committee on Taxation when the new Section 34 was under consideration. We learn from the defendant's brief, which is not challenged by counsel for the plaintiff, that prior to the enactment of P. L., 1949, Chap. 8, two decisions of the Federal Treasury Department, under the Tennessee tobacco and cigarette tax law and the Federal Income Tax Law, I. T. 3616, C. B. 1943, p. 136, 138, and I. T. 3906, C. B. 1948-1, p. 33, disclosed that one paying an income tax may use cigarette (and sales) tax payments, made under state laws, as deductions for income tax purposes when the legislation under which they are paid places the incidence thereof on the consumer, and not otherwise.

Counsel for the defendant cites us also to decisions under the laws of California, North Dakota, Tennessee and Utah; *DeAryan* v. *Akers,* 12 Cal. (2nd) 781, 87 Pac. (2nd) 695; *F. W. Woolworth Co.* v. *Gray,* (N. D.), 46 N. W. (2nd) 295; *Smoky Mountain Canteen Co.* v. *Kizer,* (Tenn.), 247 S. W. (2nd) 69; *W. F. Jensen Candy Co.* v. *State Tax Commission,* 90 Utah 359, 61 Pac. (2nd) 629. Notwithstanding the fact that decisions of other courts under the statutes of other states are not helpful, because the "language and provisions of their sales and use tax acts" are different from our own, as stated in *Hudson Pulp and Paper Corporation* v. *Johnson, supra,* the cited cases demonstrate, effectively, a tendency to the liberal construction of sales and use tax laws —to make taxation the rule and exemption the exception, as the Tennessee Court stated in the *Smoky Mountain* case, *supra.* It is true, as the plaintiff claims, that none of the laws construed in those cases from other jurisdictions carries a provision similar to that of the new Section 34, and it may be noted, also, that the California and Tennessee laws both state specifically that the taxes they levy are upon "the privilege of selling tangible personal property at retail." Our own law makes that entirely plain in the registration and license sections, Sections 6 and 7, and the declaration of Section 8 is most explicit that the:

> "burden of proving that a sale was not a sale at retail shall be upon the person who made it."

The intention of the law that every sale is taxable to the retailer unless specifically exempted is entirely apparent, and there can be no semblance of foundation for the claim that any sales are exempt from taxation on the basis of price alone except those made "for 10c or less" within the requirements of Section 3.

The appellant is holden for the tax assessed. It being stipulated that in that event "the assessment shall be sustained for the State Tax Assessor in the amount of $29.43,

without costs, interest or penalty," the case is remanded to the Superior Court for a decree to that effect.

*Appeal to the Superior Court denied.*

*Case remanded for a decree sustaining the assessment without costs, interest or penalty.*