**Robert S. CALVERT, Comptroller of Public Accounts et al., Appellants,**

v.

**CANTEEN COMPANY et al., Appellees.**

**No. 11050.**

Court of Civil Appeals of Texas.

Austin.

Feb. 20, 1963.

Rehearing Denied March 13, 1963.

———◆———

Will Wilson, Atty. Gen., H. Grady Chandler, William E. Allen, Asst. Attys. Gen., Austin, for appellants.

Heath & Davis, Austin, for appellees.

PHILLIPS, Justice.

This suit was brought in the District Court of Travis County, Texas, by the Neelley Vending Company, Canteen Co., B & M Vending Company and Tom E. Conner-Business Investments for themselves and for all others similarly situated as a class, hereinafter referred to as plaintiffs, against Robert S. Calvert, Comptroller of Public Accounts of the State of Texas, Jesse James, State Treasurer of the State of Texas and Will Wilson, Attorney General of Texas, hereinafter referred to as defendants. This suit is brought as a class action.

The following is taken from the stipulations agreed upon between the parties.

Each of the plaintiffs has qualified under the provisions of Chapter 24, Acts of the 57th Legislature, First Called Session, 1961, commonly known as the Limited Sales, Excise and Use Tax Act, Chapter 20, Title 122–A, Taxation-General, Revised Civil Statutes, 1925, V.A.T.S.Tax.-Gen. art. 20.-01 et seq., and has received from the defendant Comptroller sales tax permits as authorized and required by the Act.

Each of the plaintiffs is in the business of making retail sales of tangible personal property from mechanical vending machines, and since the effective date of said Act, each of the plaintiffs has made retail sales of tangible personal property within this State from such mechanical vending machines. The property being so sold is candy, chewing gum, coffee, soda water or soft drinks, and other such items, with the sales price of each such separate item being twenty-four cents or less to the purchaser or consumer. For instance, the plaintiff Tom E. Conner-Business Investments makes sales from mechanical vending machines limited to chewing gum with a sales price of one cent each to the purchaser or consumer, and each of the other plaintiffs make sales of such property from such machines with prices ranging from the one cent chewing gum item to other items costing twenty-four cents or less each.

Since the effective date of the Act, the plaintiffs have within the time required by said Act, and as required by the defendant Comptroller, filed with the defendant Comptroller a report on the form prescribed enumerating all retail sales of such tangible personal property made by the plaintiffs, and the plaintiffs have paid the Comptroller a tax required by the Comptroller of two percent of all receipts by plaintiffs from the total sales of such tangible personal property from the mechanical vending machines.

At the time of making such payments to the defendant Comptroller, each of the plaintiffs made such payments under protest in writing, fully setting out in detail each and every ground or reason why the plaintiffs contend that the Comptroller's demand that they pay such tax is unlawful and

unauthorized by said Act. Subsequently, each of said plaintiffs filed with the Comptroller detailed written requests or claims that the money be refunded to the plaintiffs, or that said sums be applied and credited to future tax payment under said Act, which written requests or claims were filed in accordance with Article 20.10 of said Act. Thereafter, a public hearing was held before the Comptroller at which each of the plaintiffs was represented and evidence and argument presented to the Comptroller. Thereafter, the defendant Comptroller on April 24, 1962, issued an order to each of the plaintiffs giving notice of disallowance of such requests or claims for refunds of such sums paid under protest.

■ The defendant Comptroller requires each of the plaintiffs to pay a two per cent tax of the total gross receipts such plaintiffs have from such sales of such tangible personal property from the mechanical vending machines, even though the sales price to the consumers or purchasers of each such item of tangible personal property is twenty-four cents or less, and even though the plaintiffs are prohibited by said Act from collecting from the consumer or purchaser of such tangible personal property the two per cent sales tax on each of such sales of twenty-four cents or less, and cannot therefore collect said tax from the consumer.

The Trial Court held that the requirement of the Comptroller that the plaintiffs pay a two per cent tax on the total gross receipts of plaintiffs from their respective total sales of such tangible personal property to the consumers for one cent to twenty-four cents for each such separate sale, is not authorized by and is contrary to the provisions of the said Limited Sales, Excise and Use Tax Act. The Court found that both plaintiffs and defendants acknowledged to the Court that the Act levied and imposed the tax upon the consumer, and the Court further found that Article 20.02 thereof specifically provides that the tax imposed by said Act shall be collected from the consumer, not the re-

tailer, and that as to each retail sale of tangible personal property of one cent to twenty-four cents, said Article specifically provides that there shall be no tax and no tax shall be collected on such retail sales, and in requiring the plaintiffs, as retailers, to pay the taxes as they did, the Comptroller was acting contrary to the express terms of the statute. The Court further ordered the Comptroller to refund plaintiffs the sums paid under his ruling.

This Court holds that the judgment of the Trial Court is correct.

The provisions of the above mentioned Act pertinent to this opinion are as follows :

"Art. 20.02. Imposition of Limited Sales Tax

"There is hereby imposed upon each separate sale at retail of tangible personal property made within this State a limited sales tax at the rate of two per cent (2%) of the sale price of each item or article of tangible personal property when sold at retail in this State.

"(A) Method of Collection and Rate of Limited Sales Tax. The tax hereby imposed shall be collected by the retailer from the consumer.

"(1) The tax shall be as follows and shall be collected by using the following bracket system formula on each retail sale:

| Amount | | Tax |
|---|---|---|
| $ .01 to $ .24 | | No Tax |
| .25 to .74 | | $ .01 |
| .75 to 1.24 | | .02 |
| 1.25 to 1.74 | | .03 |
| 1.75 to 2.24 | | .04 |

Provided, further, that for each additional fifty cents (50¢) of purchase, or fraction thereof, one cent (1¢) limited sales tax shall be collected thereon.

*     *     *     *     *     *

"Art. 20.05 Return and Payments

"(B) Method Retailer is to Use in Computing Tax. The limited sales tax levied under Article 20.02 hereof shall be computed and paid to the Comptroller on the basis of two percent (2%) of all receipts from the total sales of such tangible personal property sold by such retailer under said Article."

This is the first time that a court has been asked to construe these provisions of the Act.

The defendants contend that Section (B) of Art. 20.05 requires that the tax be computed and paid on the basis of two per cent of "all" receipts from the "total" sales. Defendants further argue that the only exceptions are found in Article 20.04 of the Act, which does not include an exemption for sales of less than twenty-five cents. All receipts from such sales are, therefore, to be used in the computation of the tax to be paid by the retailer to the State.

Defendants contend that their position is a reasonable one in that the Act incorporates the "bracket system formula", (Par. (A), Art. 20.02) and since there is no medium of exchange whereby this two per cent can be collected from the purchaser on sales below twenty-four cents, the retailer may and does collect more than two per cent in some of the lower brackets taxed. In this way the ordinary retailer in computing his overall tax on his gross receipts will average two per cent. Defendants argue that even though the plaintiffs do not collect any tax whatsoever, they are still liable for the tax on their total sales.

In support of their argument, the defendants rely on White v. Washington, Supreme Court of Washington, (1957), 49 Wash.2d 716, 306 P.2d 230; Smokey Mountain Canteen Company v. Kizer, Supreme Court of Tennessee, (1952), 193 Tenn. 598, 247 S.W.2d 69; Piedmont Canteen Service, Inc. v. Johnson, Supreme Court of North Carolina, (1962), 256 N.C. 155, 123 S.E.2d 582; and, Stevens Enterprises, Inc. v. Kansas, Kansas Supreme Court, (1956), 179 Kan. 696, 298 P.2d 326.

█ A sales tax is the creature of the legislature and must be interpreted by the courts as written. The cases cited by the defendants involve statutes wholly different from the Texas Act. The tax in these cases is on the privilege of doing business, the incidence of such tax being placed on the retailer with the right of recoupment against the purchaser.

In White v. Washington, cited above, the court allowed a tax on the gross receipts on sales from vending machines. The statute involved gave the tax commissioner the power to adopt rules as to the "schedule of collection" so as to eliminate the collections of fractions of one cent and so as to provide that the "aggregate collections of all taxes by the seller shall, * * * equal the amount of the tax imposed", R.C.W. 82.08.-060. In his schedule, the tax commissioner set up a bracket system which provided that there would be no tax on items from one cent to thirteen cents.

The Washington Act states, "* * * [t]he tax accrued under the provisions of this chapter, whether or not collected from the buyer shall be paid by the seller * * *" R.C.W. 82.08.070, and "The commission may authorize a seller to pay the tax levied under this chapter upon sales made through vending machines * * * or where sales are made under conditions of business such as to render impracticable the collection of the tax as a separate item * * * [t]he commission, by regulation, may provide that the applicant, under this section, furnish a proper bond sufficient to secure the payment of the tax." R.C.W. 82.08.080.

Thus the bracket system under the Washington Act is an administrative device adopted by the tax commission to permit the retailer to collect from the purchaser, as nearly as possible, the amount levied against the retailer.

In the Kizer case, cited above, where a tax on sales from vending machines was

upheld, the court described the Tennessee Act as being a tax on the vendor for the privilege of doing business. The Act contains no bracket system within itself but it does provide for the tax commissioner to install such a system. The schedule adopted by the Commissioner excluded the sales from one cent to fourteen cents from the tax.. Under the provisions of this act, the tax is computed on gross sales.

In Piedmont Canteen Service, Inc. v. Johnson and Stevens Enterprises, Inc., Kansas, cited above, the court upheld taxes on sales from vending machines, however, both Acts imposed a tax on the vendor for the privilege of doing business and both were expressly taxes on gross receipts.

Paragraph (A) of Article 20.02 of the Texas Act requires that the tax shall be collected by the retailer from the consumer. Subparagraph (1) states that *no tax* shall be collected on sales of one cent (.01¢) to twenty-four cents (24¢). This section describes the method of collecting the tax.

Paragraph (B) of Article 20.05 states that the *tax levied under Article 20.02 hereof* shall be computed and paid to the Comptroller on the basis of two per cent of all receipts from the total sales of such tangible personal property sold by such retailer *under said Article*. Paragraph (B) is the method the retailer is to use in computing the tax. In the one sentence that is Paragraph (B), Article 20.02 is referred to twice in describing first the tax and secondly the method of ascertaining the amount levied thereunder. Paragraph (A) and Paragraph (B) supplement one another and must be read together.

The construction urged by the defendants would make this tax one on gross receipts as was expressly done by statute in the cases they rely on.

Article 20.05, Paragraph (E), authorizes the retailer to deduct and withhold from the taxes paid to the State one per cent thereof to reimburse the retailer for the cost of collecting the tax. A prepayment of tax authorizes the retailer to deduct two per cent as reimbursement for collection of the tax. The tax is levied against the consumer, the retailer is merely the collector. The tax is on the sale transaction and sales of one cent to twenty-four cents are not taxed.

■ Where a statute duly enacted by the Legislature is involved, the courts must first look to the statute itself for meaning. The wording of the statute is clear and unambiguous and this Court must give it effect according to its terms. See Gately v. Humphrey, 151 Tex. 588, 254 S.W.2d 98.

The judgment of the Trial Court is affirmed.

HUGHES (dissenting).

The first sentence of Art. 20.02, Taxation-General, V.A.C.S., reads:

"There is hereby imposed upon each separate sale at retail of tangible personal property made within this State a limited sales tax at the rate of two per cent (2%) of the sale price of each item or article of tangible personal property when sold at retail in this State."

The term "sale price" is defined in Sec. (L) (1) Art. 20.01, id., as follows:

" 'Sales Price' means the total amount for which tangible personal property is sold, valued in money, whether paid in money or otherwise, without any deduction on account of any of the following:" [1]

Section (B) of Art. 20.05, id., reads:

"Method Retailer is to Use in Computing Tax. The limited sales tax levied under Article 20.02 hereof shall be computed and paid to the Comptroller on the basis of two percent (2%) of all receipts from the total sales of such tangible personal property sold by such retailer under said Article."

---

1. The deductions named are not relevant here.

The term "receipts" is defined in Sec. (D), Art. 20.01, id., as follows:

"Receipts.

"(1) 'Receipts' means the total amount of the sale or lease or rental price, as the case may be, of the retail sales of retailers, valued in money, whether received in money or otherwise, without any deduction on account of any of the following:"[2]

Art. 20.04, id., entitled "Exemptions", does not exempt sales less than twenty five cents.

The troublesome provision is, of course, Sec. (A) of Art. 20.02, id., which reads:

"Method of Collection and Rate of Limited Sales Tax. The tax hereby imposed shall be collected by the retailer from the consumer.

"(1) The tax shall be as follows and shall be collected by using the following bracket system formula on each retail sale:

| Amount | Tax |
|---|---|
| $ .01 to $ .24 | No Tax |
| .25 to .74 | $ .01 |
| .75 to 1.24 | .02 |
| 1.25 to 1.74 | .03 |
| 1.75 to 2.24 | .04 |

Provided, further, that for each additional fifty cents (50¢) of purchase, or fraction thereof, one cent (1¢) limited sales tax shall be collected thereon.

"(2) The use of tokens or stamps for the purpose of collecting or of enforcing the collection of the tax imposed in this Chapter or for any other purpose in connection with such tax is prohibited."

It is my opinion that this section when considered with the other provisions of the Act, particularly those above noted, fixes only the amount of the tax imposed upon retail sales and the receipts therefrom which may be collected from the individual purchaser. It may, at first blush, seem very unfair that the tax levied on sales under twenty five cents cannot be collected, as such, from the individual purchaser even though the retailer is required to account for such sales in remitting the tax due by him to the State. There are at least two sound answers to this criticism, (1) the retailer may recoup his tax losses on sales under twenty five cents by collecting from the purchaser more taxes on other sales than he is required to remit to the State (2) the retailer may increase the price of his product.

This Limited Sales Tax is obviously a bracket tax insofar as the purchaser is concerned. He does not always pay a tax of two per centum. Sometimes, he pays more; sometimes, he pays less. It is only when the sale price is exactly fifty cents, or some multiple thereof, that the purchaser pays to the retailer an exact two per cent tax. The first sale price on which a tax is collected by the retailer from the purchaser is twenty five cents. This tax is one cent, a four per centum tax; yet the retailer pays to the State on this sale a tax of only two per centum. Within this same bracket range for collecting taxes from the purchaser is a sale of seventy four cents. The tax collected is one cent, a rate of tax of 1.4 per centum. In the next higher bracket for collecting the tax from the purchaser is a seventy five cent sale. Here the tax is two cents, a rate of 2.7 per centum. In this same bracket a sale of $1.24 is taxed at a rate of 1.6 per centum.

It is obvious that the Act does not purport to authorize or guarantee to the retailer that he will under all circumstances collect from the purchaser on each sale the equivalent of the tax which he must remit to the State. The Act very plainly invokes the law of averages to balance its impact upon retailer and purchaser in order to justify its fairness and to give validity to the pro-

2. The deductions named are not relevant here.

vision that the tax imposed is to be collected by the retailer from the consumer.

Other Courts have considered similar statutes. I quote from White v. Washington, 49 Wash.2d 716, 306 P.2d 230, Supreme Court, as follows:

"* * * [I]f the bracket schedule is examined, it will be seen that on sales at or near the top of each bracket, the full amount of the tax is not collected from the buyer. The theory of the bracket system is that, on sales involving fractions of less than one half cent, the seller will absorb the tax; where as on sales involving a tax of more than one half cent or less than one cent, the buyer will pay an amount in excess of the actual tax. It is an overall application, the system is supposed to yield 3 percent on all sales, and this is generally found to be true. Of course, there are exceptions, where a seller deals in commodities all of which sell at a price which falls above or below a position in the bracket which yields exactly 3 percent. * * *

"It is true that it classifies sales for the purpose of applying the rate, but the rate remains constant throughout the schedule, and the schedule applies alike to every seller. In its general application, it imposes no hardship. It is only when a seller chooses to sell only items which are priced at a point on the schedule where less than the full tax is to be collected that he is forced to absorb part or all of the tax, and this is the exception rather than the rule."

Of similar import is the decision in Smokey Mountain Canteen Company v. Kizer, 193 Tenn. 598, 247 S.W.2d 69, Supreme Court, and Stevens Enterprises, Inc. v. Kansas, 179 Kan. 696, 298 P.2d 326, Supreme Court. See also Piedmont Canteen Service, Inc. v. Johnson, 256 N.C. 155, 123 S.E.2d 582, Supreme Court, W. S. Libby v.

Johnson, 148 Me. 410, 94 A.2d 907, New York Automatic Canteen Co. v. New York City, 8 A.D.2d 385, 188 N.Y.S.2d 119, 8 N.Y.2d 853, 203 N.Y.S. 905, 168 N.E.2d 709 and F. W. Woolworth v. Gray, 77 N.D. 757, 46 N.W.2d 295.

Appellees cite Winslow-Spacarb, Inc. v. Evatt, 144 Ohio 471, 59 N.E.2d 924, Supreme Court, as involving "a taxing statute and factual situation which more nearly approaches the ones presented to this Court than any other case found by appellees or cited by appellants." I have examined this case. There the taxpayer had devices which delivered but a single drink for the price of five cents. The taxing statute, Gen.Code, § 5546–2, as the Court said "definitely states" and the Court quoted and italicized, "If the price is less than nine cents, no tax shall be imposed." The Court very properly held that the statute meant what it said.

The Act before us is not a price fixing statute. The retailer may, so far as this Act is concerned, adjust his prices to meet any need occasioned by the imposition of this tax. Witness the rise in the prices of gasoline, cigarettes, beer, whiskey and other commodities subject to excise taxes when such taxes are increased. This is the only manner in which the retailer can protect himself from the effect of such tax levies. Appellees may go and do likewise. In fact, the Act seems to authorize this relief. In Sec. (D) (3), Art. 20.01, id., it is provided that "For purposes of the limited sales tax, if the retailer establishes to the satisfaction of the Comptroller that the limited sales tax has been added to the total amount of the sale price and has not been absorbed by him, the total amount of the sale price shall be deemed to be the amount received exclusive of the tax imposed."

It is my opinion that the Act fairly imposes a tax upon appellees and that they should pay it. I, therefore, respectfully dissent.