Robert S. CALVERT, Comptroller of Public
Accounts of Texas, et al., Petitioners,

v.

CANTEEN COMPANY et al., Respondents.

No. A–9547.

Supreme Court of Texas.

Oct. 2, 1963.

Rehearing Denied Nov. 6, 1963.

Waggoner Carr, Atty. Gen., H. Grady
Chandler, W. E. Allen, Asst. Attys. Gen.,
Austin, for petitioners.

Heath & Davis, Austin, for respondents.

STEAKLEY, Justice.

Respondents, Canteen Company et al.,
are in the business of selling tangible per-
sonal property at retail from mechanical
vending machines. They sell through the
machines separate items with a sales price
of twenty-four cents or less. The items
consist generally of candy, chewing gum,
coffee, and soft drinks. The Comptroller

of Public Accounts, the principal petitioner, required respondents to pay a two per cent tax on the total receipts from their sales. Respondents did so under protest and filed claims for refund. The refunds were disallowed and respondents brought this suit as a class action. The judgment of the trial court ordering the refunds was affirmed by the Court of Civil Appeals, with one Justice dissenting. Calvert v. Canteen Company, 365 S.W.2d 662. We reverse the judgments of the courts below and render judgment for petitioners.

The tax statute is Article 20.01 et seq., Vernon's Annotated Texas Statutes, Tax-Gen., V.A.T.S., known as the Limited Sales, Excise and Use Tax Act, Acts 57th Leg., 1st C.S., 1961, Ch. 24, p. 71. The pertinent provisions of the statute are as follows:

"Art. 20.02. Imposition of Limited Sales Tax.

"There is hereby imposed upon each separate sale at retail of tangible personal property made within this State a limited sales tax at the rate of two per cent (2%) of the sale price of each item or article of tangible personal property when sold at retail in this State."

Article 20.01(L) (1): "'Sales Price' means the total amount for which tangible personal property is sold, valued in money, whether paid in money or otherwise," (with deductions not relevant here).

Article 20.02(A): "Method of Collection and Rate of Limited Sales Tax. The tax hereby imposed shall be collected by the retailer from the consumer.

"(1) The tax shall be as follows and shall be collected by using the

following bracket system formula on each retail sale:

| Amount | Tax |
|---|---|
| $ .01 to $ .24 | No Tax |
| .25 to .74 | $ .01 |
| .75 to 1.24 | .02 |
| 1.25 to 1.74 | .03 |
| 1.75 to 2.24 | .04 |

Provided, further, that for each additional fifty cents (50¢) of purchase, or fraction thereof, one cent (1¢) limited sales tax shall be collected thereon."

\* \* \* \* \* \*
"Art. 20.05. Return and Payments
\* \* \*

"(B) Method Retailer is to Use in Computing Tax. The limited sales tax levied under Article 20.02 hereof shall be computed and paid to the Comptroller on the basis of two percent (2%) of all receipts from the total sales of such tangible personal property sold by such retailer under said Article."

Article 20.01(D) (1): "'Receipts' means the total amount of the sale or lease or rental price, as the case may be, of the retail sales of retailers, valued in money, whether received in money or otherwise," (without enumerated deductions not relevant here).

Respondents concede that they do not come within the specific exemptions otherwise authorized by Article 20.04[1]. Their contention is that Article 20.02(A) is "the tax imposition article, the tax levying article, the rate of tax article, the tax collection article, and designates the subject matter of the tax." Crucial to respondents' position is their insistence, predicated on the

---

[1] It is noted that respondents were expressly exempted from the Limited Sales, Excise and Use Tax by the 58th Legislature at its Regular Session; Acts 58th Leg., 1963, Ch. 138, p. 387, Art. 20.04(T) which reads:

"There are exempted from the taxes imposed by this Chapter the receipts from the sale of tangible personal property when sold through a coin-operated vending machine for a total consideration of twenty-four cents (24¢) or less."

bracket formula of Article 20.02(A), that no tax is imposed on any transaction from one cent to twenty-four cents. They argue that the burden of paying the tax is solely on the consumer; that the statute contemplates that the retailer will collect from the consumer the tax of two per cent of all receipts from total sales which Article 20.05(B) requires the retailer to pay to the Comptroller; and that if no part of the tax is collected from the consumer there is no tax.

Respondents rely principally on the case of Winslow-Spacarb, Inc. v. Evatt, 144 Ohio St. 471, 59 N.E.2d 924. The Ohio statute, Gen.C. 5546–2 provided that "If the price is less than nine cents, no tax shall be imposed." The Supreme Court of Ohio held that taxpayers operating devices selling a single five cent drink were not subject to the tax as clearly provided by the statute. Respondents urge that the same construction should be given to the bracket formula of Article 20.02(A) in its provision that no tax shall be collected by the retailer from the consumer on retail sales from one cent to twenty-four cents. They recognize that that which is taxed by Article 20.02 is "the incident, event or transaction of retail sales of tangible personal property."

■ We construe Article 20.02 as levying a two per cent limited sales tax— a transaction tax—on retail sales, with the tax to be collected in accordance with the rates enumerated in the bracket system formula of Article 20.02(A). The tax is to be collected by the retailer from the consumer in each separate retail sale at the rates and to the extent authorized by the bracket system formula. The retailer pays the whole tax if his sales do not permit collection of any portion of the tax from the consumer, such as respondents here. The retailer pays a portion of the tax if his sales are preponderantly in certain brackets, e. g., fifty-one cents to seventy-four cents; the retailer collects more than the tax from the consumer if his sales are preponderantly in other brackets, e. g., twenty-five cents

to forty-nine cents. It is only upon sales of fifty cents and multiples thereof that the tax paid by the consumer is the same as that collected by the retailer and paid to the Comptroller. The bracket system was utilized by the Legislature for collection purposes in contemplation of the fact that it is impossible for the retailer to add exactly two per cent to the sales price of every article sold. The law of averages was invoked to balance the impact of the tax upon retailer and consumer, and to permit the retailer to collect the tax from the consumer to the extent possible under the limitations of the bracket system. White v. Washington, 49 Wash.2d 716, 306 P.2d 230. Cf. Smoky Mountain Canteen Company v. Kizer, 193 Tenn. 598, 247 S.W.2d 69. Stevens Enterprises, Inc. v. State Commission of Revenue and Taxation, 179 Kan. 696, 298 P.2d 326; W. S. Libbey Co. v. Johnson, 148 Me. 410, 94 A.2d 907; Piedmont Canteen Service, Inc. v. Johnson, 256 N.C. 155, 123 S.E.2d 582.

As an alternative counter point, respondents urge that the tax as we have applied it to them is contrary to Sections 1 and 2 of Article VIII of the Texas Constitution, Vernon's Ann.St., and to the Fourteenth Amendment to the Federal Constitution. The argument is that they are required to pay the debts of another, i. e., the tax is upon the consumer, whose debt it is, but respondents are required to pay it. Further, that they are subject to discrimination in favor of those retailers making sales of twenty-five cents or more who may recoup the tax from the consumers in whole or in part; and, finally, that this results in a system of taxation which is not equal and uniform.

■ Respondents are not required to pay the taxes of someone else. The tax is upon the transaction and is collectible from the consumer only at the rates, and incident to sales, as specified in the bracket formula. The effect and result are alike upon retailers of the same class and engaged in the same type of business. Respondents are required to absorb the tax

only because they have elected to sell items at a retail price less than the price provided for collectibility from the consumer. There is no more discrimination against respondents selling items of twenty-four cents or less than there would be against a retailer selling items between fifty-one cents and seventy-four cents where a portion of the tax would have to be paid by the retailer. It would be impossible for the Legislature to levy a tax of this type that would operate exactly alike upon all, and the consequences are inherent in the taxing system adopted by the Legislature in a proper exercise of its powers. See White v. Washington, and Smoky Mountain Canteen Company v. Kizer, supra.

The judgments of the trial court and of the Court of Civil Appeals are reversed, and judgment is here rendered that respondents take nothing.

SMITH and GREENHILL, JJ., dissenting.

SMITH, Justice.

I respectfully dissent. The Court has failed to follow the basic rules governing the construction of statutes in holding that the retailer is liable for the tax. The Court bases such holding on its construction of Article 20.05(B) only, rather than giving effect to all of the language of the statute. The Court has, in effect, stricken from the Act the clear and precise language of Article 20.02(A) which provides that the tax is to be paid by and collected from the consumer, and that there "shall be" *no tax and no tax* "shall be collected" on retail sales of property costing one cent (1¢) to twenty-four (24¢).

The construction adopted by the Court fails to take into consideration the fact that Article 20.02(A) deals with imposition of the tax, levying of the tax, rate of the tax, collection of the tax, and subject matter of the tax, while Article 20.05(B) relates merely to the tax return and payment

to the State of the tax required by Article 20.02(A). However, whether the two Articles deal with the same subject matter or not, Article 20.02(A) should be recognized as the controlling statute on the imposition, rate, levy, collection and subject matter of the sales tax. Admitting for the sake of argument that the general provisions of Article 20.05(B) are in conflict with the special provisions of Article 20.02 (A) dealing with the same subject, then the former would be controlled or limited by the latter.

It is my position, however, that the two statutes under consideration do not relate to the same subject matter. Thus construed, there is no conflict or inconsistency between the two Articles. They merely supplement one another and necessarily must be read together. Article 20.05(B), under the heading "Return and Payments," uses the general language of "two per cent (2%) of all receipts from the total sales of such" property. On the other hand, Article 20.02(A) under the heading "Method of Collection and Rate of Tax," uses the specific language as to rate of tax and collection of tax that "there shall be" "no tax and no tax" "shall be collected" on sales of one cent (1¢) to twenty-four (24¢), and further that "[t]he tax hereby imposed shall be collected * * * from the *consumer*" Emphasis added.

The construction urged by the Comptroller, if adopted, necessarily causes a conflict in the statute. Such construction renders the statute inconsistent and ambiguous. The Court, in following the contention of the Comptroller, ignores the cardinal rule that a proper construction of a tax statute requires that any ambiguity, inconsistency or conflict in the statute must be strictly construed against the Comptroller and resolved in favor of the involved taxpayer. Texas Unemployment Compensation Commission v. Bass, 137 Tex. 1, 151 S.W.2d 567 (1941).

The question before this court does not involve an exemption from taxation. If it

did, then the rules of liberal construction in favor of the taxing authority and strict construction against the one claiming the exemption would be applicable.

In the present case, the question is whether or not Canteen Company et al. come within the statutory provisions imposing the tax. In the Bass case [Carpenter v. Bass], supra, where the same question was involved, the Court of Civil Appeals, 142 S.W.2d 406, said:

"In such case, contrary to the rule relating to *exemptions* the applicable rule of construction is that the statute should be construed strictly against the taxing authority, and liberally in favor of one sought to be held liable for the tax. (Citing authorities)

"Under the operation of that rule if there be any ambiguity in the meaning of the word 'controls' as used in said (taxing statute) it is to be construed most strictly against the tax liability asserted, and, therefore, of course, most liberally in favor of non liability."

The Sales Tax Act was passed originally by the 57th Legislature. That same Legislature, at its Third Called Session, passed a resolution requesting the Comptroller to rescind his order requiring all retailers collecting the tax to remit the tax to the Comptroller on the basis of two per cent (2%) of their total gross receipts from all sales of taxable tangible personal property. The resolution stated that as a matter of public policy it was the specific intent of the Legislature in enacting the:

"Limited Sales, Excise and Use Tax to exclude from the computation of gross receipts from the sales of taxable personal property, those gross receipts derived from the sale of any taxable item or article of tangible personal property having a value of twenty-four cents (24¢) or less; and * * * that the Comptroller of Public Accounts be requested to rescind his present interpretation of the * * * (Act) * * * which is in conflict with this declaration of public policy and that a new interpretation in accord with this declaration be issued. * * *"

The courts are not necessarily compelled to accept such declarations of intentions, however, interpretations and constructions placed on statutes by the same Legislature that passed the original statute are entitled to be given some weight by the courts. See First National Bank of Port Arthur v. City of Port Arthur, Tex.Civ.App. 35 S.W.2d 258 (1931).

The specific language of the Texas Sales Tax Act imposed a tax upon the incident or the transaction of a sale at retail of tangible personal property, and clearly provided that the tax imposed shall be collected by the retailer from the consumer. Therefore, it is not surprising that the Legislature advised the Comptroller through the above resolution that he was in error in attempting to require the seller (retailer) to pay a sales tax on his total gross sales in spite of the fact that the Texas Sales Tax Act clearly, precisely and unmistakably does not levy a tax on retail sales of one cent (1¢) to twenty-four cents (24¢).

The law of averages theory adopted by the Court simply cannot be used to change the clear language of the statute. The bracket-system formula can only be invoked to balance the impact of a tax that has been imposed. The case of Winslow-Spacarb, Inc. v. Evatt, 144 Ohio St. 471, 59 N.E.2d 924 (1955), had under consideration a taxing statute very similar to the Texas statute under consideration. In that case, the Supreme Court of Ohio said:

"If Section 5546–12a were to be applied to such a vendor *who collects no tax from the consumer,* the vendor would be paying three per cent (3%) on his gross retail sales entirely out of his own pocket, while other vendors in the same vicinity selling similar or

other commodities, some of their sales being taxable and others not, would have the privilege and advantage of deducting 'the amount of tax paid to the state by means of cancelling pre-paid tax receipts,' for which expenditure they have been reimbursed by the consumer, thus placing them in a more favored position and in some instances, at least, causing them to pay little or nothing. The result would be unfair discrimination among vendors, in violation of the equal protection clauses of Section 2, Article I of the Constitution of Ohio and the 14th Amendment to the Constitution of the United States."

I can see no material distinction between the Ohio statute and the Texas statute. The Ohio statute, Gen.C. § 5546–2, provides that no tax should be collected on retail sales "[i]f the price is less than nine cents (9¢)" and the Texas statute provides that "there shall be" *no tax and that no tax* "shall be collected" on retail sales of twenty-four cents (24¢) and less.

Our court has failed to distinguish the nature or incidence of the Texas tax, which is a transaction tax upon the event of a retail sale, from a privilege, license or gross receipts tax levied upon *the privilege* of making retail sales. The Court's failure to make the distinction is demonstrated in its reliance upon cases from other jurisdictions which are not in point. The case of Smoky Mountain Canteen Co. v. Kizer, 193 Tenn. 598, 247 S.W.2d 69, involved a statute which required a tax for the exercise of the *privilege* of engaging in the business of selling tangible personal property at retail in the state. The Act further provided that *the tax was to be computed on gross sales for the purpose of remitting the amount of tax due to the state, and was to include each and every retail sale.* In construing the statute, the Supreme Court of Tennessee said:

"The Tennessee Sales Tax is a levy upon the vendor. It is a tax upon the privilege of selling at retail, leasing or renting tangible personal property. The doing of any of these acts is declared to be a *taxable privilege* and the Sales Tax Act levies a tax thereon, the measure of which is on the gross proceeds derived by the retailer from the sale at retail, * * *." (Emphasis added)

Other cases upon which the Court relies are Piedmont Canteen Service, Inc. v. Johnson, 256 N.C. 155, 123 S.E.2d 582, and Stevens Enterprises, Inc. v. State Commission of Revenue and Taxation, 179 Kan. 696, 298 P.2d 326. The North Carolina and the Kansas statutes, like the Tennessee statute, are each different from the Texas statute. These statutes clearly place the tax on the seller or retailer, whereas the Texas statute does not in any manner impose a tax upon the retailer. The Kansas statute, G.S.1951 Supp. 79–3603, for example, provides " * * * for the privilege of engaging in the business of selling tangible personal property at retail in this state [Kansas]."

These cases have, no doubt, led this court to conclude that "[r]espondents are required to absorb the tax only because they have *elected* to sell items at a retail price less than the price provided for collectibility from the consumer." This holding is entirely out of harmony with the Texas statute. The Texas statute contains no language which can be said to have reference to a "taxable privilege." The statement of our court is in harmony with the theory that the retailer, in electing to sell items at a retail price less than the price provided for collectibility from the consumer, is exercising a *privilege* for which a tax is due by the retailer.

This court should also compare the bracket systems of the three states with that of Texas. The Tennessee "bracket system" is an administrative device *adopted* by the Tax Commissioner to permit the retailer "in so far as practicable" to pass the tax on to the consumer, while the

"bracket system" in the Texas statute is an integral part of the statute itself and by specific statutory language is the actual "Method of Collection and Rate of Tax" for each sale within the bracket. The Tennessee bracket is an administrative limited method of passing the retailer's tax on to the consumer, while the Texas bracket is the *statutory rate of the consumer's tax on each retail sale.*

The North Carolina bracket system is an administrative device "for convenience of the retailer in collecting the tax." The retailer has the burden of paying the privilege tax, however, with permission to pass on to the purchaser only a part of his tax liability, while the Texas bracket system is an integral part of the statute and is the actual statutory "Method of Collection and Rate of Tax" upon the consumer. The same is true as to the Kansas statute.

The case of White v. Washington, 49 Wash.2d 716, 306 P.2d 230, cited by the Court, is not in point. The Washington statute, RCW 82.08.060, is entirely different from the Texas statute. The Washington statute levied a statutory three per cent (3%) tax against the retailer, and then merely authorized the State Tax Commission to promulgate an *administrative* schedule or a bracket system "of the tax required to be collected by the seller from the buyer," and the statute further specifies that the administrative methods adopted by the Commission were "to eliminate collections of fractions of one cent (1¢) and so as to provide that the aggregate collections of all taxes by the seller shall, *insofar as practicable,* equal the amount of the tax imposed by this chapter," and further provided that "such schedules may provide that no tax need be collected from the buyer upon sales below a stated sum * * *." Thus, the bracket system under the Washington statute is clearly an administrative device adopted by the Tax Commission to permit the retailer to collect from the purchaser, as nearly as possible, the amount of tax levied against the retailer.

In view of the distinct difference between the tax statutes of other jurisdictions, except Ohio, and the Texas statutes, the cases construing the foreign statutes can be of little or no help to the Court in solving the question before this court. The well-established rules of statutory construction adopted by the courts of this state call for the conclusion that the tax, under Article 20.02(A), is imposed upon the consumer, not upon the retailer. A proper determination of whether the Texas statute levies a collectable tax against the retailer on sales between one cent (1¢) and twenty-four (24¢) depends upon a proper interpretation of the specific language of the statute itself. In arriving at a proper interpretation of the statute, the specific language of Article 20.02(A) must be considered and not ignored.

The judgment of the Court of Civil Appeals should be affirmed.

GREENHILL, J., joins in this dissent.