AUTOMAGIC VENDORS, INC.,
a Corporation, Respondent,

v.

M. E. MORRIS, Director of Revenue, State
of Missouri, Appellant.

SPOT SALES, INC., a Corporation,
Respondent,

v.

M. E. MORRIS, Director of Revenue, State
of Missouri, Appellant.

COFFEE TIME, INC., a Corporation,
Respondent,

v.

M. E. MORRIS, Director of Revenue, State
of Missouri, Appellant.

Nos. 50121–50123.

Supreme Court of Missouri,

En Banc.

Feb. 23, 1965.

---

Armstrong, Teasdale, Roos, Kramer & Vaughan, Bruce E. Woodruff, St. Louis, for Spot Sales, Inc., and Coffee Time, Inc.

Kappel & Neill, Richard Wolff, St. Louis, for Automagic, Inc.

Thomas F. Eagleton, Atty. Gen., Eugene G. Bushmann, Asst. Atty. Gen., Jefferson City, for appellant.

Charles R. Judge, Dubail, Judge & Kilker, St. Louis, for amici curiae.

HYDE, Presiding Judge.

These cases, consolidated for hearing in the Circuit Court, are petitions for judicial review of the administrative decisions of the Director of Revenue of the State of Missouri (see Chap. 536 and Rule 100) denying refunds of certain payments of sales taxes, paid under protest in accordance with the Sales and Use Regulations (see Sec. 144.270, subd. 1) involving construction of the revenue laws of this state. See Sec. 3, Art. V, Const., V.A.M.S. (Unless otherwise stated statutory citations are to RSMo 1959, V.A.M.S.) The court found petitioners entitled to the refunds claimed and entered judgment therefor, adjudging costs against the Director, who has appealed from this judgment.

The question for decision is the effect of the 1961 amendment to the sales tax law, establishing a bracket system for collection of sales taxes, on the liability of sellers to remit taxes to the Director.

Sec. 144.020 provided: "[T]here shall be and is hereby levied and imposed and shall be collected and paid: (1) Upon every retail sale in this state of tangible personal property a tax equivalent to two per cent of the purchase price paid or charged."

Sec. 144.060 provided: "It shall be the duty of every person making any purchase or receiving any service upon which a tax is imposed by sections 144.010 to 144.510 to pay the amount of such tax to the person making such sale."

Sec. 144.080 provided: "Every person receiving any payment or consideration upon the sale of property * * * shall, on or before the fifteenth day of the month following each calendar quarterly period of three months, make a return to the director of revenue of all taxes collected for the preceding quarter, or required to be collected for the preceding quarter, and shall remit the taxes so collected or required to be collected to the director of revenue."

Sec. 144.100 provided: "2. The returns shall show the amount of gross receipts from sales, services and taxable transactions by the person and the amount due thereon during and for the period covered by the return and with the return the person shall remit to the director of revenue the amount of the tax due, including any and all moneys collected from a purchaser as sales tax."

These sections were not changed in 1961 but the following new section 144.285 was adopted:

"Brackets for collection of tax.—Notwithstanding the rate of taxes imposed by this chapter, and in order to avoid fractions of pennies, the following brackets shall be applicable to all two per cent taxable transactions:

"(1) On sales of less than twenty-five cents no tax shall be added;

"(2) On sales in amounts from twenty-five cents up to and including seventy-four cents, one cent shall be added for taxes;

"(3) On sales in amounts from seventy-five cents to one dollar, two cents shall be added for taxes; and

"(4) On sales in amounts of more than one dollar, two per cent shall be charged upon each dollar of price, plus the above bracket charges upon any fractional part of a dollar in excess of even dollars.

"No vendor or seller shall knowingly charge or receive from a purchaser as a sales tax any sum in excess of the sums prescribed in subdivisions one to four inclusive of Section 144.285." Laws 1961, p. 634.

Before the enactment of this bracket system tokens were provided "to enable purchasers and recipients of taxable sales, services and transactions to pay the tax when the same amounts to a fractional part of one cent." Sec. 144.270, subd. 2; see also Sec. 144.280. Authorization for tokens was repealed by the 1961 act and liquidation of tokens was required. Laws 1961, p. 634.

Petitioners sell merchandise through coin-operated vending machines making a large number of separate sales at less than twenty-five cents; two of them (Coffee Time and Spot Sales) sell no merchandise for more than seventy-four cents, so make sales only in the first two brackets specified in 1961 Sec. 144.285. The trial court agreed with petitioners' contentions, making the following decisive findings and conclusions:

"3. That the Sales Tax Law, as amended, is in the nature of a transaction tax; i. e., computation of the tax is dependent upon the amount of sale or sales comprising one transaction; the Sales Tax Law, as amended, does not impose a tax on the total or gross sales or receipts of the seller.

"4. That the Sales Tax Law, as amended, imposes the duty to pay the tax on the purchaser; the seller's liability is only to pay the tax collected or required to be collected.

"5. That in accordance with Section 144.285, R.S.Mo.Cum.Supp.1961, re-

lators are not required to collect any sales tax, nor is any sales tax due, on transactions of less than twenty-five cents (25¢), and therefore, relators are not required to remit to the Director of Revenue or the Department of Revenue any sales tax on said transactions."

The State says: "There is general agreement between the parties upon the proposition that our sales tax is imposed upon the 'purchaser' while the 'seller' has the duty of collecting it. The real dispute in this lawsuit arises over petitioners' insistence that a seller is only responsible for that amount of sales tax he is able to collect;" but the State says "they have chosen a mode of doing business which virtually precludes them from in fact collecting any tax on their retail sales." Nevertheless, as noted, Sec. 144.080 requires sellers to remit taxes "collected or required to be collected." Whether or not the seller actually collects the tax from the buyer has no effect on the seller's liability to remit to the Director. The decisive question is: What taxes are required to be collected by the seller? Whatever taxes the seller is required to collect, the seller is required to remit to the Director. Prior to the adoption of Sec. 144.285, the amount the seller was required to collect was "two per cent of the purchase price." Sec. 144.020. As the State says, even under the mill token system, this could not be collected exactly, for example in sales under five cents, but the law of averages made it substantially accurate for the seller to remit two per cent of his gross sales.

■ The State argues that this principle should still be applied to sales at all amounts, saying that Sec. 144.020 is still the Section that imposes the tax and that remains "two per cent of the purchase price." However, 1961 Sec. 144.285 says "[n]otwithstanding the rate of taxes imposed by this chapter * * * the following brackets shall be applicable to all two per cent taxable transactions." It then says: "On sales of less than twenty-five cents no tax shall be added." Is not this a change in tax im-

posed? and does it not exempt sales of less than twenty-five cents from being taxable transactions? It is our view that Sec. 144.-020 must be held to have been amended by the provisions of Sec. 144.285 to the extent that no tax is imposed on sales for less than twenty-five cents. We note that both Sec. 144.020 and Sec. 144.285 were materially amended in 1963 (Laws 1963, p. 196–197; 1963 Supp., Secs. 144.020 and 144.285) so that our construction of the 1961 provisions is not applicable to those now in force.

The State relies on the following cases: Stevens Enterprises, Inc. v. State Commission of Revenue and Taxation, 179 Kan. 696, 298 P.2d 326 (1956); W. S. Libbey Co. v. Johnson, 148 Me. 410, 94 A.2d 907 (1953); Piedmont Canteen Service, Inc. v. Johnson, 256 N.C. 155, 123 S.E.2d 582 (1962); F. W. Woolworth v. Gray, 77 N.D. 757, 46 N.W.2d 295 (1951); Calvert v. Canteen Company, Tex.Sup., 371 S.W.2d 556 (1963); Smoky Mountain Canteen Co. v. Kizer, 193 Tenn. 598, 247 S.W.2d 69 (1952); White v. State, 49 Wash.2d 716, 306 P.2d 230 (1957).

These cases involve different statutory provisions from ours and perhaps the one nearest to ours is the Calvert case (371 S.W. 2d 556) in which a tax of two per cent of the sale price was imposed to be collected by using the bracket system provided. The court, in ruling that sellers must remit two per cent of gross sales for the tax said: "It is only upon sales of fifty cents and multiples thereof that the tax paid by the consumer is the same as that collected by the retailer and paid to the Comptroller. The bracket system was utilized by the Legislature for collection purposes in contemplation of the fact that it is impossible for the retailer to add exactly two per cent to the sales price of every article sold. The law of averages was invoked to balance the impact of the tax upon retailer and consumer, and to permit the retailer to collect the tax from the consumer to the extent possible under the limitations of the bracket system." We consider this principle to be applicable, under our Act, to sales for twenty-five cents or more because the tax collected on some

of these sales will be more than two per cent although less than that on others, under our bracket system.

However, the Texas Act contained in V.A.T.S. Insurance Code, Art. 20.05 the following provision: "(B) Method Retailer Is to Use in Computing Tax. The limited sales tax levied under Article 20.02 hereof shall be computed and paid to the Comptroller on the basis of two percent (2%) of all receipts from the total sales of such tangible personal property sold by such retailer under said Article."

■ We have no such provision in our sales tax statutes, so this Texas case is not applicable to our situation as to sales for less than twenty-five cents. It is interesting to note that our first sales tax was a gross receipts tax (Laws 1933–34 Extra Session, p. 155) but was changed to a tax collected from the purchaser at the next regular session of the General Assembly. Laws 1935, p. 411. The requirement to remit the taxes "collected or required to be collected" appears in that act as does the authorization of issuance and use of tokens for payment of the tax. Laws 1935, p. 417, Secs. 5 and 6. The 1961 Act, abolishing tokens and providing no tax should be added on sales of less than twenty-five cents, created a new and different situation. Therefore, the lack of any provision for remitting on the basis of two per cent of gross sales (as did the Texas Act) together with the language "notwithstanding the *rate* of taxes imposed * * * the following brackets shall be applicable to all two per cent taxable transactions," and the positive provision that "no tax shall be added" on sales of less than twenty-five cents, seems to us to mean that such sales are not taxable. Thus our view is that since no tax is "required to be collected" on such sales, none is required to be remitted. We hold the trial court correctly ruled that petitioners are entitled to the refunds sought for taxes claimed to be due on sales for less than twenty-five cents.

■ The State contends that, in any event, the court erred in ruling it "pay the costs of this proceeding," citing Murphy v. Limpp, 347 Mo. 249, 147 S.W.2d 420, 423; Hartwig-Dischinger Realty Co. v. Unemployment Compensation Commission, 350 Mo. 690, 168 S.W.2d 78, 82; State ex rel. State Social Security Commission v. Butler's Estate, 353 Mo. 14, 181 S.W.2d 768, 771. In the Murphy case, involving the Unemployment Compensation Commission, we said (147 S.W.2d l. c. 423) : " 'It is a general and well established rule apart from statute that costs are not recoverable from a state, in her own courts, whether she has brought suit as plaintiff or has properly been sued as defendant; or whether she is successful or defeated.' Therefore, absent a statutory provision, the costs were erroneously assessed against the state." This ruling was followed in the two other cases hereinabove cited; see also 14 Am.Jur. 22, Costs, Sec. 34; 81 C.J.S. States, § 234, p. 1345. Petitioners say the above-cited cases were before the adoption of the Administrative Procedure Act, Chap. 536, but point to no specific provision thereof authorizing costs to be taxed against the State. They cite only Sec. 536.140(6) providing "[a]ppeals may be taken from the judgment of the court as in other civil cases," and Civil Rule 77.06 stating "the party prevailing shall recover his costs against the other party, except in those cases in which a different provision is made by law." Neither of these provisions specifically imposes liability on the State for costs and we hold they are not sufficient to do so. Petitioners also cite State ex rel. Schneider's Credit Jewelers v. Brackman, Mo.App., 260 S.W.2d 800, 813, but that case apparently was based on Reconstruction Finance Corporation v. J. G. Menihan Corp., 312 U.S. 81, 61 S.Ct. 485, 85 L.Ed. 595, which it cited, and which stated the principle "that in the absence of a contrary showing 'it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to "sue or be sued", that agency is not less amenable to judicial process than a private enterprise under like circumstances would be'." Here a State

officer, and the collection of the State's revenue, is involved; not a governmental agency launched into the commercial world to function like a private enterprise. Therefore, we find no authority for a judgment for costs against the State.

The judgment in favor of petitioners for refunds of amounts paid as taxes on transactions of less than twenty-five cents is affirmed and it is reversed as to other matters adjudicated.

EAGER, C. J., STORCKMAN, HOLMAN, HENLEY, FINCH, JJ., and STONE, Special Judge, concur.

DALTON, J., not sitting.