[No. 33651. Department One. January 28, 1957.]

DON W. WHITE *et al., Appellants,* v. THE STATE OF WASHINGTON, *Respondent.*[1]

[1]Reported in 306 P. (2d) 230.

*Weter, Roberts & Shefelman* and *Robert G. Moch,* for appellants.

*The Attorney General* and *Keith Grim, Assistant,* for respondent.

ROSELLINI, J.—Two issues are presented on this appeal: (1) Whether the provisions of the Washington retail sales tax law, chapter 180, Laws of 1935, p. 706, as amended (RCW chapter 82.08), and regulations issued pursuant thereto, impose a tax on sales made by the appellants under the stipulated facts; and (2) if it be held that such statute and regulations do impose a tax on such sales, whether such statute and regulations are in violation of the equal protection and due process clauses of the Federal and state constitutions—United States constitution, amendment 14, § 1, and Washington constitution, Art. I, §§ 3 and 12.

The stipulated facts on which the case was tried may be summarized as follows:

At all times pertinent to this action, the appellants (plaintiffs in the trial court) were engaged in the business of

making sales at retail of tangible personal property within the state of Washington. Every sale made by the appellants was for an amount between five cents and thirteen cents, inclusive, and all were made through automatic vending machines.

The appellants collected no sales tax on any of the sales made by them, pursuant to an administrative ruling of the tax commission, issued March 21, 1951, effective April 1, 1951, Vol. 7, AR No. 3, which provides as follows:

"BRACKET SYSTEM FOR THE COLLECTION OF RETAIL SALES TAX

"Chapter 44 of the Laws of 1951, abolishing the use of tax tokens in the collection of the Retail Sales Tax, becomes effective on April 1, 1951.

"The Tax Commission, under the authority of section 82.08.060, R.C.W., as amended by said chapter 44 of the Laws of 1951, has adopted the following schedule to govern the collection of the Retail Sales Tax on all sales of tangible personal property made on and after April 1, 1951, to wit:

| *Amount of Sale* | | *Tax Due* |
|---|---|---|
| 1¢ to | 13¢ | No tax |
| 14¢ to | 49¢ | 1 cent |
| 50¢ to | 84¢ | 2 cents |
| 85¢ to | $1.14 | 3 cents |
| $1.15 to | $1.49 | 4 cents |
| $1.50 to | $1.84 | 5 cents |
| $1.85 to | $2.14 | 6 cents |
| Et cetera." | | |

The appellants paid to the state of Washington a retail sales tax of 3 per cent of their gross sales during the period involved in this action. None of them made application to the tax commission for authority to pay the tax themselves on their sales made through vending machines, pursuant to the provisions of RCW 82.08.080, and no such authority was granted to any of them by the tax commission.

Throughout the state of Washington, retail sellers of tangible personal property generally collect the retail sales tax from the buyers of such property in accordance with the administrative ruling set out above.

Since the enactment of chapter 180, Laws of 1935, the tax commission, in its administration of that act, has at all times required all retail sellers of tangible personal property

to remit sales tax to the state in amounts computed by applying the applicable sales tax rate to such sellers' total gross proceeds from all of their retail sales not exempt under RCW 82.08.030, although the tax commission has never issued a formal ruling or regulation to that effect, except that since May 1, 1936, a formal rule of the tax commission has provided that for practical purposes persons owning and operating vending machines are authorized to waive collection of the tax from the customer and to absorb the amount of the tax on the individual sales and to pay directly to the tax commission 3 per cent (2 per cent originally) of the gross sales of or through such machines.

Within two years after the payment of the taxes involved in this suit, the appellants filed with the tax commission their petitions for refund thereof. The tax commission held a hearing on these petitions on January 18, 1954, and issued an order on January 29, 1954, denying the petitions. The appellants duly served and filed a notice of appeal from this order and filed an appeal bond on February 26, 1954, as required by law.

The trial court concluded that the revenue act of 1935, as amended, and regulations issued pursuant thereto, impose a retail sales tax upon every retail sale of tangible personal property within this state, including all sales for amounts less than fourteen cents, and that the imposition of the tax on sales made by the appellants does not violate the equal protection and due process clauses of either the Federal or state constitutions and dismissed the action.

The pertinent provisions of the statute which is the subject of controversy in this action are as follows:

RCW 82.08.020 "There is levied and there shall be collected a tax on each retail sale in this state equal to three percent of the selling price . . ."

RCW 82.08.010 "(1) 'Selling price' means the consideration, whether money, credits, rights, or other property, . . . paid or delivered by a buyer to a seller, all without any deduction on account of the cost of tangible property sold, . . . taxes, or any other expenses whatsoever paid or accrued . . ."

RCW 82.04.040 " 'Sale' means any transfer of the ownership of, title to, or possession of property for a valuable consideration . . ."

RCW 82.04.050 " 'Sale at retail' or 'retail sale' means every sale of tangible personal property . . ."

RCW 82.08.050 "The tax hereby imposed shall be paid by the buyer to the seller, and each seller shall collect from the buyer the full amount of the tax payable in respect to each taxable sale in accordance with the schedule of collections adopted by the tax commission pursuant to the provisions of RCW 82.08.060. The tax required by this chapter, to be collected by the seller, shall be deemed to be held in trust by the seller until paid to the commission. . . .

"In case any seller fails to collect the tax herein imposed or having collected the tax, fails to pay it to the commission in the manner prescribed by this chapter, whether such failure is the result of his own acts or the result of acts or conditions beyond his control, he shall, nevertheless, be personally liable to the state for the amount of the tax.

"The amount of tax, until paid by the buyer to the seller or to the commission, shall constitute a debt from the buyer to the seller and any seller who fails or refuses to collect the tax as required with intent to violate the provisions of this chapter or to gain some advantage or benefit, either direct or indirect, and any buyer who refuses to pay any tax due under this chapter shall be guilty of a misdemeanor.

"Where a buyer has failed to pay to the seller the tax imposed by this chapter and the seller has not paid the amount of the tax to the commission, the commission may, in its discretion, proceed directly against the buyer for collection of the tax, in which case a penalty of ten percent may be added to the amount of the tax . . ."

RCW 82.08.060 "The tax commission shall have power to adopt rules and regulations prescribing methods and schedules for the collection of the tax required to be collected by the seller from the buyer under this chapter. The methods and schedules prescribed shall be adopted so as to eliminate the collection of fractions of one cent and so as to provide that the aggregate collections of all taxes by the seller shall, in so far as practicable, equal the amount of tax imposed by this chapter. Such schedules may provide that no tax need be collected from the buyer upon sales below a stated sum and may be amended from time to time to accomplish the purposes set forth herein."

RCW 82.08.070 "Each seller, on or before the fifteenth day of the month succeeding the end of each bimonthly period, shall make out a return for the preceding bimonthly period, upon forms to be provided by the commission, setting forth the amount of all sales, nontaxable sales, taxable sales, the amount of tax thereon, and such other information as the commission may require, sign, and transmit the same to the commission. The commission may require annual returns from any taxpayer, setting forth such additional information as it may deem necessary to correctly determine tax liability. The tax accrued under the provisions of this chapter, whether or not collected from the buyer shall be paid by the seller to the commission in bimonthly installments at the time of transmitting the return above provided for."

RCW 82.08.080 "The commission may authorize a seller to pay the tax levied under this chapter upon sales made through vending machines and similar devices or where sales are made under conditions of business such as to render impracticable the collection of the tax as a separate item and waive collection of the tax from the customer. No such authority shall be granted except upon application to the commission and unless the commission, after hearing, finds that the conditions of the applicant's business are such as to render impracticable the collection of the tax in the manner otherwise provided. The commission, by regulation, may provide that the applicant, under this section, furnish a proper bond sufficient to secure the payment of the tax."

Sales to which the tax does not apply are listed in RCW 82.08.030. They do not include sales for amounts below thirteen cents.

In support of their contention that the 1951 legislature, in amending Laws of 1935, chapter 180, § 22, p. 723, so as to authorize the tax commission to issue schedules providing that no tax need be collected on sales under a certain amount (RCW 82.08.060), intended to exempt such sales from the tax, the appellants cite *Mouledoux v. Maestri*, 197 La. 525, 2 So. (2d) 11, and *Winslow-Spacarb, Inc. v. Evatt*, 144 Ohio St. 471, 59 N. E. (2d) 924.

The ordinance involved in the *Mouledoux* case contained an express requirement that all of the tax collected, whether or not it was in excess of the amount levied, should be paid

over to the city. The court held that under the statute as it was administered, the appellants were not required to pay over any tax in excess of the amount collected, and consequently, they could not complain that the statute was discriminatory. The ordinance differs from our statute in this respect, that we have no express requirement that all of the tax collected shall be paid over to the state. On the contrary, RCW 82.08.070 provides that the seller shall remit the amount of tax "accrued under the provisions of this chapter, whether or not collected from the buyer," based upon his total sales. The "amount of tax accrued" is, under RCW 82.08.020, an amount equal to 3 per cent of the selling price on each retail sale.

The statute under consideration in *Winslow-Spacarb, Inc. v. Evatt, supra*, contained the express provision, "if the price is less than nine cents, no tax shall be imposed." The only provision found in our statute which is at all similar is the provision authorizing the tax commission to eliminate the necessity of making collections where the sale is under a stated amount. This provision must be read in conjunction with the rest of the statute to determine whether the legislature intended to exempt such sales from taxation.

The respondents cite a number of cases in support of their construction of the statute. These cases, likewise, all involve statutory provisions which differ in one way or another from those enacted in this state. To determine the legislative intent, we must examine the statute in the light of its legislative history, bearing in mind that if the statute is ambiguous, it must be construed in favor of the taxpayer and against the taxing power. *Pacific First Federal Sav. & Loan Ass'n v. Pierce County*, 27 Wn. (2d) 347, 178 P. (2d) 351; *Thys v. State*, 31 Wn. (2d) 739, 199 P. (2d) 68.

The problem in this case, as in all of the cases in which courts have considered the apparent inequities resulting from the imposition of a small sales tax, arises because of the difficulty of administering a tax which necessarily involves fractions of cents. It will be remembered that prior to 1951, the tax on sales involving small amounts was paid

by tokens representing fractions of cents. Prior to 1941, the statute provided that the full amount of tax due should be collected on each sale, but even then, there were no tokens issued in denominations small enough to pay the exact amount on sales involving less than five cents. The legislature in 1941 (Laws of 1941, chapter 76, § 4, p. 196) for the first time authorized the tax commission, in preparing schedules for the collection of the tax, to provide that on sales below a stated sum, no tax need be collected from the buyer. Thereafter, no tax was collected on sales below five cents. In 1951, when the legislature did away with the use of tokens, collections were eliminated on sales below fourteen cents. Nevertheless, since the tax was first imposed, the tax commission has consistently required sellers to report their gross sales and compute the tax payable on the basis of 3 per cent thereof. Authority for this procedure is found in RCW 82.08.070.

It is apparent that the legislature, in enacting the 1951 amendment, intended merely to do away with the cumbersome and burdensome token system and substitute a simpler method of paying the tax, and not to create a new exemption. The appellants attach great significance to the provision which eliminates collections on small sums. However, if the schedule is examined, it will be seen that on sales at or near the top of each bracket, the full amount of the tax is not collected from the buyer. The theory of the bracket system is that, on sales involving fractions of less than one half cent, the seller will absorb the tax; whereas on sales involving a tax of more than one half cent but less than one cent, the buyer will pay an amount in excess of the actual tax. In its over-all application, the system is supposed to yield 3 per cent on all sales, and this is generally found to be true. Of course, there are exceptions, where a seller deals in commodities all of which sell at a price which falls above or below a position in the bracket which yields exactly 3 per cent.

RCW 82.08.020 imposes the tax in these words: "There is levied and there shall be collected a tax on each

retail sale in this state equal to three per cent of the selling price. . . ." The duty of payment by the buyer and collection by the seller is modified in the later section (RCW 82.08.050) which provides that the payment and collection shall be in "accordance with the schedule of collections adopted by the tax commission pursuant to the provisions of RCW 82.08.060." The latter section in turn provides that the methods and schedules prescribed shall be adopted so as to eliminate the collection of fractions of one cent and so as to provide that the aggregate collections of all taxes by the seller shall, in so far as practicable, equal the amount of tax imposed, and that such schedules may provide that no tax need be collected from the buyer upon sales below a stated sum. In these provisions, there can be found no intent to eliminate the payment of 3 per cent on aggregate sales; and RCW 82.08.050 provides that in case any seller fails to collect "the tax herein imposed," or having collected the tax, fails to pay it to the commission in the manner prescribed, *whether such failure is the result of his own acts or conditions beyond his control*, he shall nevertheless be liable to the state for the amount of the tax.

It is apparent, in reading the statute as a whole, that a distinction is made between the tax imposed and the tax to be paid by the buyer and collected by the seller. The former remains constant—3 per cent on each sale— while the latter varies according to the schedule which the tax commission is authorized to issue. The inevitable result is that, in some instances, a seller will collect more tax than he is required to remit to the state, and in others, he will collect less. The requirement of the statute is simply that the schedule shall be calculated to produce, in the aggregate as nearly as possible, the amount of the tax imposed, while at the same time eliminating the collection of fractions of one cent. It is not suggested that a schedule could be devised which would accomplish this purpose better than the one adopted by the tax commission.

If any doubt remains that the legislature intended each seller to remain responsible for the remittance of 3 per cent on all of his sales, the doubt will be removed

when it is observed that the tax commission has consistently interpreted the statute as imposing this requirement, while the legislature has amended the statute on several occasions without rejecting this interpretation.

■ When a statute is ambiguous, the construction placed upon it by the officer or department charged with its administration, while not binding on the courts, is entitled to considerable weight in determining the intention of the legislature; and the persuasive force of such interpretation is strengthened when the legislature, by its failure to amend the statute, silently acquiesces in the administrative interpretation. This is particularly true when, as here, the section is subsequently (1) considered by the legislature, (2) amended in some other particular, and (3) the administrative construction of the section is not repudiated. *State ex rel. Pirak v. Schoettler*, 45 Wn. (2d) 367, 274 P. (2d) 852. And, see, *Paulsell v. Peters*, 9 Wn. (2d) 599, 115 P. (2d) 708.

It is true, as we said in *Morrow v. Henneford*, 182 Wash. 625, 47 P. (2d) 1016, that the duty of paying the tax is imposed upon the buyer, and the duty of collecting and transmitting it upon the seller. However, the statute imposes upon the seller the duty of transmitting the tax, whether or not he collects it, and whether or not his failure to collect it is attributable to his own fault. The tax is imposed upon the transaction (RCW 82.08.020); the duty of payment in accordance with the adopted schedule is upon the buyer; the duty of remitting the tax in the amount of three per cent of his gross sales is upon the seller.

■ The appellants point out that the system adopted sometimes results in inequities, as in their case; and consequently, they say, they are denied the equal protection of the laws and are deprived of their property without due process. This would be true if the statute and regulations were discriminatory, or if they provided an arbitrary and unreasonable classification. *Power Mfg. Co. v. Saunders*, 274 U. S. 490, 71 L. Ed. 1165, 47 S. Ct. 678; *Quaker City Cab Co. v. Commonwealth of Pennsylvania*, 277 U. S. 389, 72 L. Ed. 927, 48 S. Ct. 553. But the law makes no attempt to

discriminate among sellers, nor does it classify them. It is true that it classifies sales for the purpose of applying the rate, but the rate remains constant throughout the schedule, and the schedule applies alike to every seller. In its general application, it imposes no hardship. It is only when a seller chooses to sell only items which are priced at a point on the schedule where less than the full tax is to be collected that he is forced to absorb part or all of the tax, and this is the exception rather than the rule.

In answer to the contention raised by the appellants, in the case of *Smoky Mountain Canteen Co. v. Kizer*, 193 Tenn. 598, 247 S. W. (2d) 69, the supreme court of Tennessee said:

"The act does not single out one individual as against another. It treats all alike. Because certain forms of business, as the instant business [also an automatic vending machine business], happen to be conducted in such a manner as to make it impossible to collect this tax from the consumer does not make the Act invalid and unconstitutional under the Equal Protection and Due Process clauses of the Constitution. The Legislature may, as long as it made no arbitrary discrimination between these parties, validly levy this tax. There is no such arbitrary discrimination here."

The tax commission of Tennessee used a bracket system almost identical to the one employed in the state of Washington. It is true that in the quoted case, the court held that the tax was levied upon the retailer for the privilege of doing business, and he was given the right to pass the tax on to the consumer, and in that respect the statute differs from that of Washington. But the principle involved is the same. In either case, the discrimination complained of is that most sellers may collect the tax from the consumer, whereas, owing to their mode of doing business, the appellants may not. The reasoning of the Tennessee court is applicable to both.

Quoting Mr. Justice Cardozo, speaking for the supreme court of the United States, the Tennessee court said:

" 'We have never yet held that government in levying a graduated tax upon all the members of a class must satisfy itself by inquiry that every group within the class will be

able to pay the tax without the sacrifice of profits. The operation of a general rule will seldom be the same for everyone. If the accidents of trade lead to inequality or hardship, the consequences must be accepted as inherent in government by law instead of government by edict.' " *Fox v. Standard Oil Co. of New Jersey*, 294 U. S. 87, 79 L. Ed. 780, 55 S. Ct. 333.

It is significant that the appellants have not suggested a practical way in which they could collect the tax imposed from their customers. If tokens were used, or if an additional penny were collected, this would require the installation of new equipment, the cost of which would no doubt equal or exceed the loss they sustain, if any, by reason of the fact that they pay the tax themselves. The impracticality of this was recognized by the legislature when it enacted § 24, chapter 180, Laws of 1935, p. 724 [cf. 82.08.080], authorizing the commission to permit a seller using automatic coin vending machines to absorb the tax himself, upon making proper application.

We conclude that the statute in question requires the seller to pay the tax imposed when he fails for any reason to collect it; that the use of the bracket system authorized by the statute and adopted by the commission is reasonable and is designed to accomplish the purposes of the tax law as effectively as possible; that the law is neither arbitrary nor discriminatory and violates no constitutional right of the appellants.

The judgment is affirmed.

DONWORTH, SCHWELLENBACH, FINLEY, and FOSTER, JJ., concur.

March 19, 1957. Petition for rehearing denied.