[No. 48266-7. En Banc. June 3, 1982.]

THE DEPARTMENT OF TRANSPORTATION, ET AL, *Appellants,* v. STATE EMPLOYEES' INSURANCE BOARD, ET AL, *Respondents.*

*Kenneth O. Eikenberry, Attorney General,* and *Spencer W. Daniels, Assistant,* for appellant Department of Transportation.

*Hafer, Cassidy & Price,* by *John Burns* and *David R. Wohl,* for appellant Inlandboatmen's Union of the Pacific.

*Reaugh & Prescott,* by *J. E. Fischnaller,* for appellant Masters, Mates & Pilots.

*Preston, Thorgrimson, Ellis & Holman,* by *David A. Peters* and *Kirk A. Dublin,* for appellant Marine Engineers Beneficial Association.

*Kenneth O. Eikenberry, Attorney General,* and *Richard A. Heath, Assistant,* for respondent State Employees' Insurance Board.

STAFFORD, J.—Appellants State Department of Transportation (Department), Inlandboatmen's Union of the Pacific, International Organization of Masters, Mates and Pilots and the Marine Engineers Beneficial Association seek declaratory relief in this action brought against respondent State Employees' Insurance Board (SEIB).[1] The sole issue is whether the Department may negotiate separate employer–supported insurance coverage with union employees of the Washington State ferry system or whether the Department is restricted to making contributions to insurance plans offered state employees by the SEIB.

The trial court denied appellants' motion for summary judgment and granted respondent's motion. In granting respondent's motion, the trial court declared that the ferry system employees of the Marine Transportation Division of the Department are state employees subject to the jurisdiction of the SEIB with respect to the design and procurement of insurance they receive from the state. We disagree with the holding, reverse the trial court and remand the cause for entry of a summary judgment in favor of appellants.

The SEIB contends it is the purpose of RCW 41.05 (the SEIB act) to centralize the design and procurement of insurance for the employees of *all* branches of state government. The ferry system employees, it is asserted, fall within the broad definition of "state employee" as that term is used in RCW 41.05. While RCW 47.64.030 does authorize the Department to negotiate for and include insurance coverage in its labor agreements, the SEIB argues it does not specifically give the Department authority to design and procure insurance contracts. It is urged that the

---

[1]All other unions representing the employees of the Marine Transportation Division of the Department were joined as involuntary parties defendant pursuant to CR 19(a) and and RCW 7.24.110. The technical position of having been joined as an involuntary party defendant with the SEIB does not necessarily represent an individual union's interest in this cause of action. In fact, most of the defendant unions did not answer the Department's complaint.

latter authority is given to the SEIB by RCW 41.05.[2] Thus, the SEIB concludes, in labor negotiations pertaining to health insurance coverage the Department and the ferry system employees may only choose from the various plans and optional coverages offered and designed by the SEIB.

We do not agree with the conclusion of the SEIB. It looks primarily at RCW 41.05 and the overall function of the SEIB, almost in isolation, while virtually overlooking the impact of RCW 47.64 on the subject of negotiated health and welfare contracts.[3] The SEIB also denigrates the specific proviso, in RCW 41.05.050(2), that nothing therein is to be a limitation on persons employed under RCW 47.64.[4]

Clearly, RCW 41.05 and RCW 47.64, both relating to health care benefits for state employees, create an ambiguity. As pointed out by appellants, there are at least four possible applications:

---

[2]RCW 41.05.050, enacted in 1970, provides in relevant part:

"(1) Every department, division, or separate agency of state government, and such county, municipal, or other political subdivisions as are covered by this chapter, shall provide contributions to insurance and health care plans for its employees and their dependents, the content of such plans to be determined by the state employees insurance board. . . .

"(2) The contributions of any department, division, or separate agency of the state government, and such county, municipal, or other political subdivisions as are covered by this chapter, shall be set by the state employees insurance board, subject to the approval of the governor for availability of funds as specifically appropriated by the legislature for that purpose: *Provided, That nothing herein shall be a limitation on employees employed under chapter 47.64 RCW . . .*" (Italics ours.)

[3]RCW 47.64.030 reads in relevant part:

"The authority [Washington Toll Bridge Authority] is empowered to negotiate and to enter into labor agreements with its employees or their representatives, including provisions for health and welfare benefits for its employees to be financed either wholly or in part by contributions from the operating fund. The commission shall have the authority to administer labor relations and to adjudicate all labor disputes on the best interests of the efficient operation of any ferry or ferry system. . . ."

The Washington Toll Bridge Authority is now the Department of Transportation. *See* RCW 47.04.015.

[4]For text of the proviso in RCW 41.05.050(2), see footnote 2.

(1) Ferry system employees *may not participate in SEIB insurance plans* even if they so desire. They are restricted to negotiating for health and welfare benefits pursuant to RCW 47.64.

(2) Ferry system employees *may participate in SEIB insurance plans* if they so desire. However, they may negotiate for different coverage pursuant to RCW 47.64.

(3) Ferry system employees *must participate in SEIB insurance plans. However, they may also negotiate for additional,* non–SEIB *coverage* pursuant to RCW 47.64.

(4) Ferry system employees *must participate in SEIB insurance plans and only those plans. However, they may negotiate for additional coverage* under those plans (if available) *to be paid by the employer,* pursuant to RCW 47.64.

(Italics ours.) Appellants contend the second interpretation is the proper one because the actions of the ferry system, its employees, and the SEIB (since its inception in 1970) have been consistent therewith. Interpretation number 4 is, of course, the SEIB's current position.

█ At the outset it must be recognized that the primary objective of statutory construction is to carry out the intent of the Legislature. *Anderson v. O'Brien,* 84 Wn.2d 64, 67, 524 P.2d 390 (1974); *Amburn v. Daly,* 81 Wn.2d 241, 501 P.2d 178 (1972). The intent must be determined primarily from the language of the statute itself. *Driscoll v. Bremerton,* 48 Wn.2d 95, 99, 291 P.2d 642 (1955). If, however, the intent is not clear from the language of the statute, the court may resort to statutory construction. *See H.O. Meyer Drilling Co. v. Alton V. Phillips Co.,* 2 Wn. App. 600, 605, 468 P.2d 1008 (1970), *aff'd,* 79 Wn.2d 431, 486 P.2d 1071 (1971). Such statutory construction may involve a consideration of the legislative history, *Shelton Hotel Co. v. Bates,* 4 Wn.2d 498, 508, 104 P.2d 478 (1940); *Kucher v. County of Pierce,* 24 Wn. App. 281, 285, 600 P.2d 683 (1979); other statutes dealing with the same subject, *State v. Felix,* 78 Wn.2d 771, 776, 479 P.2d 87 (1971); *Springer v. Department of Licensing,* 24 Wn. App. 847, 849, 604 P.2d 994 (1979); and administrative interpretation of the statute, *Hama Hama Co. v. Shorelines Hearings Bd.,* 85 Wn.2d 441,

448, 536 P.2d 157 (1975); *Pedersen v. Department of Transp.*, 25 Wn. App. 781, 789, 611 P.2d 1293 (1980). In any event the interpretation adopted should be the one that best advances the legislative purpose. *Anderson v. Morris*, 87 Wn.2d 706, 716, 558 P.2d 155 (1976).

In light of the obvious ambiguity we may resort to a consideration of extrinsic evidence in interpreting RCW 41.05 and 47.64. In so doing the history of events surrounding the enactment of RCW 41.05 and 47.64 is helpful.

The Washington Toll Bridge Authority (Authority), predecessor to the Department, acquired the ferry system from the Puget Sound Navigation Company in 1951. *See* Laws of 1949, ch. 179. The Authority was empowered to "negotiate and to enter into labor agreements with its employees". Laws of 1949, ch. 148, § 3.

In 1953 the statute was amended to authorize the Authority to negotiate and to enter into labor agreements which specifically included:

> provisions for health and welfare benefits for its employees to be financed either wholly or in part by contributions from the operating fund.

Laws of 1953, ch. 211, § 2 (later codified as RCW 47.64-.030). In 1961 these statutes relating to labor relations with the ferry system employees were reenacted as RCW 47.64.

In 1963 House Bill 6 was introduced authorizing any department, division, agency or political subdivision to provide for hospitalization and medical aid for employees *when funds were available.* During debate over the measure an issue arose concerning a limitation on the amount of governmental contribution because such a limitation would have an impact upon the amount then being paid, by contract, for the ferry system employees' insurance. In response, Laws of 1963, ch. 75, § 1 (codified as RCW 41.04-.180) was enacted providing specifically that:

> such limitation shall not apply to employees employed under chapter 47.64 RCW. [*i.e.*, the ferry system employees of the Authority.]

From 1963 to 1970 the ferry system employees and the

Authority continued to negotiate collective bargaining agreements containing provisions for health and welfare benefits, including insurance, pursuant to the authorization of RCW 47.64.030. In 1970 the Legislature enacted Laws of 1970, 1st Ex. Sess., ch. 39 (RCW 41.05) which established the State Employees' Insurance Board and made the SEIB act and insurance plans derived thereunder mandatory for state agencies. All other public employees remained under the purview of RCW 41.04. As with all previous legislation pertaining to insurance for state employees, however, section 5 of the new act contained a proviso that:

> nothing herein shall be a limitation on employees employed under chapter 47.64 RCW.

Insofar as the issue here is concerned subsequent amendments to the SEIB act did not alter its basic thrust.[5]

Subsequent to the establishment of the SEIB in 1970, the ferry system employees continued to enter into collective bargaining agreements with the Authority.[6] Most agreements included provisions for state–financed health and welfare benefits which were neither designed nor procured by the SEIB. Thus most of the ferry system employees did not participate in any SEIB plan. There were, however, one or two unions that did negotiate agreements under which their employees received SEIB coverage.

The collective bargaining procedure under RCW 47.64 continued without apparent question or conflict with the SEIB until approximately January 1980 when, pursuant to a request of the Director of the Department of Personnel,

---

[5]After this appeal was taken, Laws of 1981, ch. 344, p. 1700 was enacted. This act substantially modifies the collective bargaining rights of the ferry system employees and deletes the ferry system employees proviso found in Laws of 1970, 1st Ex. Sess., ch. 39, p. 260. By its own terms, however, the 1981 amendment does not affect the issue before us. Section 3(3) provides: "This chapter shall not affect the provisions of any existing collective bargaining agreement entered into prior to the effective date of this act". Consequently, a number of collective bargaining agreements remain in force, and will continue to be operative in the near future.

[6]The duties of the Washington Toll Bridge Authority were transferred to the Department of Transportation in 1977. *See* RCW 47.01.031; RCW 47.04.015.

the Attorney General issued a letter opinion defining the jurisdiction of the SEIB over the state ferry system employees. AGO 3 (1980). The Attorney General opined that, under RCW 41.05, employees of the state ferry system were subject to the jurisdiction of the SEIB with respect to employee–funded insurance coverage received from the State. The opinion stated in pertinent part:

> Thus, the parties [the Department and the ferry system employees] can still negotiate whether the *supplemental plans made available by the SEIB* will be paid for by the employer—but the *design of the insurance plans and the types offered would be determined by the SEIB.*

(Italics ours.) AGO 3 (1980), at 2. The SEIB indicated no formal action would be taken until either the Department or the ferry system employees requested the matter be placed on the SEIB agenda for action. Nevertheless, the letter opinion raised doubts about the validity of non–SEIB health and welfare provisions in both existing and future contracts between the Department and the ferry system employees. Thus, this action for declaratory relief was instituted.

In considering the legislative history as well as the actions of the Department and the SEIB, we can only conclude that historically and chronologically, appellants' interpretation of the statutory interplay must prevail. Further, the clear action of the SEIB since 1970 is consistent with the interpretation employed by appellants and inconsistent with the SEIB's current position. As we said in *Hama Hama Co. v. Shorelines Hearings Bd., supra* at 448:

> [T]here is the well known rule of statutory interpretation that the construction placed upon a statute by an administrative agency charged with its administration and enforcement, while not absolutely controlling upon the courts, should be given great weight in determining legislative intent. . . . The primary foundation and rationale for this rule is that considerable judicial deference should be accorded to the special expertise of administrative agencies. Such expertise is often a valuable aid in interpreting and applying an ambiguous stat-

ute in harmony with the policies and goals the legislature sought to achieve by its enactment.

*See also Pedersen v. Department of Transp., supra.*

Also the fact that in the five times the SEIB act was amended, prior to 1981, the Legislature did not repudiate the statutory construction employed by the Department, the ferry employees and followed by the SEIB is entitled to great weight. *Newschwander v. Board of Trustees,* 94 Wn.2d 701, 711, 620 P.2d 88 (1980); *White v. State,* 49 Wn.2d 716, 725, 306 P.2d 230 (1957).

■ Finally, in considering the ferry system employees' proviso in RCW 41.05.050(2), the court must consider not only the goals of the SEIB act (RCW 41.05), but must also consider the goals of RCW 47.64, the statute to which the proviso in RCW 41.05.050(2) refers. Clearly, the Legislature considered the collective bargaining authority of the ferry system to be of great importance. The preservation of the traditional goal of collective bargaining in maritime labor–management relations was a goal from the outset of the State's involvement in the ferry system in 1949. Laws of 1949, ch. 148, § 1, p. 372. It continued to be reflected in RCW 47.64.005:

> The state of Washington, as a public policy, declares that sound labor relations are essential to the development of a ferry and bridge system which will best serve the interests of the people of the state.

This continued until 1981 when the Legislature substantially modified the collective bargaining rights of the ferry system employees. Laws of 1981, ch. 344, p. 1700. Section 3 of this modification, however, expressly provided that the newly enacted chapter would not affect the provisions of any existing collective bargaining agreements, a clear recognition that the agreements then in force were to be honored. As indicated earlier most such agreements contained provisions for health and welfare benefits that were non–SEIB.

■ Thus, because of the legislative history of RCW 47.64, and RCW 41.05, the specific proviso contained in

RCW 41.05.050(2), as well as the interpretation of the Department's authority to negotiate that has been followed for nearly three decades without legislative intervention; and because of the SEIB's 10–year–long interpretation of the interrelationship between RCW 47.64 and RCW 41.05 and its apparent recognition of the Department's authority to negotiate the terms of health and welfare contracts with the ferry system employees, we hold that the ferry system employees are not subject to mandatory SEIB jurisdiction.

We reverse the trial court and remand the cause to the trial court with instructions to deny respondent SEIB's motion for summary judgment and grant appellants' motion for summary judgment, ruling that, insofar as past and existing health and welfare contracts between the Department and the ferry system employees are concerned, the SEIB did not have mandatory jurisdiction over the design and procurement of health and welfare benefits that resulted from labor negotiations.

BRACHTENBACH, C.J., ROSELLINI, UTTER, DOLLIVER, WILLIAMS, and DORE, JJ., and CUNNINGHAM, J. Pro Tem., concur.

DIMMICK, J. (dissenting)—I would affirm the trial court. The statutory scheme at issue herein requires ferry system employees to participate in State Employees' Insurance Board (SEIB) insurance plans. The employees, however, may negotiate for additional employer contributions pursuant to the proviso in RCW 41.05.050(2).

Ferry system employees are included within the definition of a state employee subject to the provisions of the SEIB act (RCW 41.05). RCW 41.05.010(2) defines a state employee as "*all* full time and career seasonal employees of the state, . . . whether or not covered by civil service". (Italics mine.) A ferry system employee is one employed under the authority of the Washington Toll Bridge Authority. RCW 47.64.010(4). Pursuant to RCW 47.04.015 the Washington Toll Bridge Authority means the State

Department of Transportation. The Washington State Department of Transportation is a state agency and, as such, its employees are employees of the State and fall within the scope of RCW 41.05 unless otherwise exempted.

The primary issue herein is whether the proviso contained in RCW 41.05.050(2) constitutes an exemption of ferry system employees from *all* the provisions of RCW 41.05. I disagree with the majority and would hold that it clearly does not do so. The sole function of the proviso is to exempt ferry system employees from the requirement of RCW 41.05.050(2) itself—regarding employers' contributions to the state employees' insurance fund.

The statutory language clearly and unambiguously supports this position. Thus the majority's venture into statutory construction and legislative history is unwarranted. *See McCarver v. Manson Park & Rec. Dist.*, 92 Wn.2d 370, 597 P.2d 1362 (1979); *Snow's Mobile Homes, Inc. v. Morgan*, 80 Wn.2d 283, 494 P.2d 216 (1972).

Former RCW 41.05.050(2) reads, in material part, as follows:

> (2) The contributions of any department, division, or separate agency of the state government, and such county, municipal, or other political subdivisions as are covered by this chapter, shall be set by the state employees insurance board, subject to the approval of the governor for availability of funds as specifically appropriated by the legislature for that purpose: *Provided*, That nothing *herein* shall be a limitation on employees employed under chapter 47.64 RCW . . .

(Italics mine.) This subsection contains limitations on contributions and the word "herein" refers only to those limitations and not to the entire chapter. The plain meaning of the statute is supported by the rule that a "proviso in a . . . statute is generally held to apply only to the clause in question, unless a clear legislative intent to the contrary is demonstrated. *See Bayha v. PUD 1*, 2 Wn.2d 85, 97 P.2d 614 (1939)." *State ex rel. Morrison v. Seattle*, 6 Wn. App. 181, 187, 492 P.2d 1078 (1971). A clear legislative intent

indicating that the exemption applies to the entire chapter is not demonstrated herein. Had the Legislature wished to exempt ferry employees from the coverage of the act entirely it could have done so. The very next proviso in RCW 41.05.050(2) states that "provision for school district personnel shall not be made under this *chapter.*" (Italics mine.)

The reason for the Legislature's exempting ferry system employees from the operation of RCW 41.05.050(2) is apparent. As noted above, RCW 41.05.050(2) provides that agency contributions for employees' insurance are (a) set by the State Employees' Insurance Board and (b) subject to approval by the Governor for the availability of funds as specifically appropriated by the Legislature. Former RCW 47.64.030, on the other hand, provides that such contributions (a) may be the subject of negotiations between the employer and employees or their representatives and (b) are to be financed either wholly or in part "by contributions from the operating fund." Moreover, there is no requirement in RCW 47.64.030 that the contributions be specifically appropriated by the Legislature or that the Governor approve of the contribution level. In recognition of RCW 47.64.030 the Legislature excepted ferry system workers from the specific limitations on contributions specified in RCW 41.05.050(2). Thus, in essence the effect of the proviso in RCW 41.05.050(2) is to remove any conflict between the two statutes insofar as employers' contributions are concerned.

This interpretation of RCW 41.05.050(2) does not conflict with the statutory goal of "sound labor relations." RCW 47.64.005. The collective bargaining authority of the ferry system, assumed by the majority to be of great importance, is not negated. There is still room for negotiation in this area since not all of the insurance programs offered by the SEIB are fully funded by the State. Thus, the parties can still negotiate whether supplemental plans made available by the SEIB will be paid for by the employer—but the