[No. 19982-7-III. Division Three. January 15, 2002.]

DAHL-SMYTH, INC., *Respondent*, v. THE CITY OF WALLA WALLA, *Appellant*.

*Richard G. Wernette* (of *McAdams, Ponti & Wernette, P.S.*), for appellant.

*James K. Sells* (of *Ryan, Sells, Uptegraft & Decker, Inc., P.S.*), for respondent.

*Robert G. Beaumier, Jr.*, on behalf of City of Spokane, amicus curiae.

*Leslie C. Nellermoe*, on behalf of Waste Management of Washington, amicus curiae.

KURTZ, C.J. — Dahl-Smyth, Inc., sued the City of Walla Walla under former RCW 35.13.280 (1965) after Walla Walla annexed certain areas in which Dahl-Smyth held an exclusive right to provide waste collection services. Dahl-Smyth initially sued under former RCW 35.13.280, which deals with annexation by noncode cities and is virtually identical to the language in former RCW 35A.14.900 (1967).

Because Walla Walla is a code city, the applicable statute is former RCW 35A.14.900.[1] In relevant part, former RCW 35A.14.900 provides that after a franchise is cancelled by annexation, the franchisee may nevertheless continue to provide waste collection services within the annexed area for a five-year period. The statute further provides that the franchisee may sue the city for "measurable damages" caused by the cancellation of its franchise. After a trial, the court awarded Dahl-Smyth "measurable damages" of $425,000, representing the loss in value to its certificate or franchise. Walla Walla appeals, contending the court erred by awarding Dahl-Smyth compensation for the loss in value of its certificate or franchise as "measurable damages" under former RCW 35A.14.900.

On appeal, the precise issue before us is the meaning of "measurable damages" as that phrase is used in former RCW 35A.14.900. We conclude that its meaning is not clear and that we must construe the statute as a whole in order to ascertain its meaning. We conclude that when a city allows a franchisee to continue its waste collection services for an additional five years after cancellation, the city's liability to the franchisee as "measurable damages" does not include the loss in value to the certificate or franchise. Rather, the city's liability to the franchisee is limited to

---

[1] Former RCW 35A.14.900 (1967) provides in pertinent part:

The annexation by any code city of any territory . . . shall cancel, as of the effective date of such annexation, any franchise or permit theretofore granted to any person, firm or corporation by the state of Washington, or by the governing body of such annexed territory, authorizing or otherwise permitting the operation of any . . . garbage collection and/or disposal . . . within the limits of the annexed territory, but the holder of any such franchise or permit canceled pursuant to this section shall be forthwith granted by the annexing code city a franchise to continue such business within the annexed territory for a term of not less than five years from the date of issuance thereof, . . . PROVIDED, That the provisions of this section shall not preclude the purchase by the annexing code city of said franchise, business, or facilities at an agreed or negotiated price, or from acquiring the same by condemnation upon payment of damages, including a reasonable amount for the loss of the franchise or permit. In the event that any person, firm or corporation whose franchise or permit has been canceled by the terms of this section shall suffer any measurable damages as a result of . . . annexation . . . such person, firm or corporation shall have a right of action against any code city causing such damages.

measurable incidental and consequential damages proximately caused by the cancellation of the franchise. We reverse the damage award and remand for further proceedings consistent with our opinion.

## FACTS

Dahl-Smyth has operated a waste collection business in the Walla Walla area since 1953. As required by statute, Dahl-Smyth holds a Certificate of Convenience and Necessity under "G Permit" No. 165. The certificate was issued by the Washington State Utilities and Transportation Commission and it grants Dahl-Smyth the exclusive right to provide solid waste collection service in designated areas of Walla Walla County.

Walla Walla provides its own solid waste collection service within the city's boundaries. Consequently, when Walla Walla annexes areas in which Dahl-Smyth provides waste collection services, Dahl-Smyth loses customers. But, under former RCW 35A.14.900, Walla Walla is required to compensate Dahl-Smyth for the loss of its customers due to annexation.

Under this statute, at the time of annexation Walla Walla could either (1) acquire the "franchise, business, or facilities" by purchase or condemnation; or (2) issue a new franchise for a period of five years and be liable to the franchisee for "measurable damages" resulting from the cancellation of the franchise.[2] Former RCW 35A.14.900; *Metro. Servs., Inc. v. City of Spokane*, 32 Wn. App. 714, 718, 649 P.2d 642 (1982).

In 1985, Dahl-Smyth sued Walla Walla. The complaint alleged that from 1960 to 1984, Walla Walla annexed areas where Dahl-Smyth and its predecessor in interest had provided exclusive waste collection services. Dahl-Smyth requested damages under former RCW 35.13.280. By agreement of the parties, Walla Walla did not file an answer

[2] In 1997, the statute was amended to increase the minimum franchise period from five years to seven years. LAWS OF 1997, ch. 171, § 3.

until July 1999. The parties agreed to delay the prosecution of the case until this court filed an unpublished opinion in the case of *Dahl-Smyth, Inc. v. City of College Place*, No. 7102-2-III (Wash. Ct. App. Feb. 5, 1987).

Like Walla Walla, College Place was sued by Dahl-Smyth after College Place had annexed areas covered by Dahl-Smyth's certificate. In that case, Dahl-Smyth asked the court for damages for the decrease in the value of its certificate due to the annexation and for the loss of five years of future revenue. *College Place*, slip op. at 3. Dahl-Smyth explained that it operated on a 10-year business cycle and that the continuation of its franchise for an additional five years after cancellation did not fully compensate it for its losses. Specifically, Dahl-Smyth argued that because its expenses continued for years 6 through 10, it was damaged by the loss of income in those years. Dahl-Smyth requested as "measurable damages" the loss of five years of future income. *College Place*, slip op. at 4-5.

The trial court granted Dahl-Smyth an award for the decrease in the value of its certificate but rejected its claim for lost profits. The court compared a claim under former RCW 35.13.280 to an eminent domain action and reasoned that both actions do not include damages "for the loss to the business operation." *College Place*, slip op. at 4. On appeal, the court affirmed the holding of the trial court but rejected its reasoning. The court stated that Dahl-Smyth's claim under former RCW 35.13.280 was not limited to the decrease in the value of its certificate and it could include other "measurable damages." But, the court held, a claim for future lost profits was not "measurable damages" under former RCW 35.13.280 because "lost profits are not capable of exact measurement." *College Place*, slip op. at 5.

The parties filed cross-motions for summary judgment. The court decided several issues on summary judgment. First, the court ruled that Dahl-Smyth was time-barred from bringing any claim for annexations that occurred prior to August 15, 1982. Next, the court reasoned that based on the ruling in *College Place*, Dahl-Smyth was precluded from

advocating that "measurable damages" included lost profits but further stated that Dahl-Smyth could recover as "measurable damages" the decrease, if any, in the value of its certificate.

At trial, Dahl-Smyth presented two experts on the issue of damages. They testified that a waste collection business is worthless without its certificate because it is the certificate that generates a 100 percent market share for the company. Therefore, the value of the company is the value of the certificate. For that reason, they testified, the generally accepted method for valuing a certificate is to use a formula where the earnings of a company are determined before interest, taxes, depreciation, and amortization and then a multiplier of between 6 and 7.6 is applied. Both experts agreed that their calculations necessarily included an estimate of future revenues less saved expenses.

Not surprisingly, Walla Walla's experts disagreed with Dahl-Smyth's methodology and offered different formulas for determining Dahl-Smyth's measurable damages. By their calculations, Dahl-Smyth had no measurable damages because its customers and revenues increased after annexation.

After trial, the court ruled that Dahl-Smyth's certificate is a property right that has value over and above lost profit. The court also concluded that "[i]f this property right is taken away or its use denied by the defendant municipality, just and reasonable compensation is warranted." Clerk's Papers (CP) at 1753. The court accepted the testimony of Dahl-Smyth's experts regarding the proper method for calculating damages. Specifically, the court held that:

> Plaintiff is entitled to measurable damages for the loss of its solid waste collection territory by reason of annexation by defendant, beginning with territories annexed beginning August 15, 1982, which is three (3) years prior to the filing date of this action. The amount of damages is found to be $425,000.00, based upon calculations and methodology provided by plaintiff's expert witnesses without any offset including the eco-

nomic benefit derived during the five year exclusive service post-annexation or decreased expenses beyond the five years. CP at 1753-54. Walla Walla appeals.[3]

 *Standard of Review.* We review the trial court's statutory construction of former RCW 35A.14.900 de novo. *Stuckey v. Dep't of Labor & Indus.*, 129 Wn.2d 289, 295, 916 P.2d 399 (1996). If a statute is plain and unambiguous, its meaning must be primarily derived from the language itself. *Dep't of Transp. v. State Employees' Ins. Bd.*, 97 Wn.2d 454, 458, 645 P.2d 1076 (1982). If not, we resort to statutory construction. Our primary goal is to ascertain and give effect to the Legislature's intent. *Rozner v. City of Bellevue*, 116 Wn.2d 342, 347, 804 P.2d 24 (1991). We read the statute as a whole and try to place the language in the context of the overall legislative scheme. *Miller v. City of Tacoma*, 138 Wn.2d 318, 328, 979 P.2d 429 (1999). It is said that we should be guided by reason and common sense. *Kelso v. City of Tacoma*, 63 Wn.2d 913, 917-18, 390 P.2d 2 (1964).

## ANALYSIS

Walla Walla contends the trial court erred in its calculation of damages for several reasons. Dahl-Smyth, the City maintains, is collaterally estopped from claiming the damages it recovered in this case by virtue of the court's decision in *College Place*. Moreover, Walla Walla argues that Dahl-Smyth's experts inflated damages by using rates and housing units in existence 17 years after the annexation and cancellation of its certificate. Finally, Walla Walla maintains, the trial court erred by refusing to award an offset to the City for the value of the postcancellation, five-year exclusive franchise period granted by former RCW 35A.14.900.

Former RCW 35A.14.900 authorized the cancellation of a garbage collection franchise by annexation and it further

---

[3] Dahl-Smyth filed a cross-appeal regarding the summary judgment order. However, it appears Dahl-Smyth has abandoned its appeal.

provided that if the municipality exercised this right, the municipality could either: (1) grant an exclusive five-year franchise to the garbage collector permitting it to continue business within the area; or (2) acquire by purchase or condemnation the franchise, business or facility. The statute also provided that anyone whose franchise or permit had been canceled by annexation and who suffered "measurable damages" as a result had a cause of action against the city. Logically, "measurable damages" could refer only to the first option because if a city either purchased or condemned the franchisee's rights, there would be no claim for additional damages, measurable or otherwise. *Metro. Servs.*, 32 Wn. App. at 719. "Measurable damages" is not defined in the statute.

Like other municipalities, Walla Walla is authorized by statute to establish a waste collection system. CONST. art. XI, § 11; RCW 35.21.120. Significantly, the authority to annex areas and to bring those areas within a municipality's waste collection system has been characterized as an exercise of police power. *Hass v. City of Kirkland*, 78 Wn.2d 929, 932, 481 P.2d 9 (1971). In *Metropolitan Services*, 32 Wn. App. at 717, Metropolitan argued that its franchise was a vested property right and, therefore, the city's cancellation of its franchise by annexation constituted a constitutional taking requiring just compensation. Rejecting *Metropolitan*'s claim, the court held that the exercise of the police power to cancel an existing franchise for waste collection does not constitute a constitutional taking. Consequently, Metropolitan was not entitled to any compensation for the cancellation of its franchise except as provided by former RCW 35.13.280. *Metro. Servs.*, 32 Wn. App. at 719-20.

In contrast, Spokane argued that Metropolitan had been fully compensated for the cancellation of its franchise by the continuation of the franchise for the additional five years. Rejecting this argument, the court reasoned: "the provision allowing an action for measurable damages would be meaningless if the granting of a 5-year franchise fully compensated the franchisee." *Id.* at 719. Specifically, the

court stated that a franchisee whose franchise is cancelled and who thereafter is granted a five-year franchise after annexation may seek damages "for any loss sustained over and above the benefit derived from the franchise." *Id.*

■■ Here, the trial court held that Dahl-Smyth's certificate was a property right, for which Dahl-Smyth was entitled to compensation under former RCW 35A.14.900 in the event its value was diminished by annexation. Furthermore, the trial court accepted Dahl-Smyth's evidence that the value of the business was its certificate and that the certificate could be valued by valuing the business. In effect, Dahl-Smyth requested and received as "measurable damages" the very damage award denied in *Metropolitan*: just compensation for the loss in value of its franchise.

What is the meaning of "measurable damages" as that phrase is used in former RCW 35A.14.900? Because its meaning is not clear, we resort to statutory construction. We begin with the premise that a garbage collection franchise is a property right, for which the franchisee is not entitled to compensation in the event of cancellation by annexation, except as provided in former RCW 35A.14.900. *Metro. Servs.*, 32 Wn. App. at 719-20.

By enacting former RCW 35A.14.900, the Legislature recognized that having established exclusive garbage franchises for the benefit of the public, it would be unjust to authorize their cancellation without some period of adjustment and some compensation. After the franchise is cancelled by annexation, a city may take over the franchise and provide its own garbage services. In that event, a city must pay the franchisee the full market value of the franchise at a price established either by negotiation or by condemnation. Alternatively, a city may allow the franchisee to continue its services for an additional five years after cancellation. In that event, a city's liability is limited to "measurable damages." By granting the exclusive franchise period and by providing for "measurable damages," the Legislature evidenced an intent not to compensate the franchisee for the loss in value to the franchise or certificate

caused by annexation. Rather, the Legislature limited the annexing city's liability to incidental and consequential damages proximately caused by the cancellation of the franchise.

However, even these damages are significantly limited by the requirement that the damages be "measurable." For instance, in *College Place* Dahl-Smyth requested consequential damages in the form of lost profits. The court correctly rejected a claim for lost profits as too speculative to qualify as "measurable damages." By limiting a franchisee's claim for damages to those damages that are "measurable," the Legislature evidenced an intent to limit claims for damages to those claims that are directly connected to the cancellation of the franchise and capable of exact measurement.

Lastly, Walla Walla contends that Dahl-Smyth's damages are fixed as of the effective date of the annexation. Walla Walla emphasizes the language of former RCW 35A.14.900, which cancels the franchise as of the effective date of the annexation. This would eliminate the five-year, postcancellation period from the court's consideration. Again, we must look to the language of the entire statute. In relevant part, the statute provides for compensation "[i]n the event that any person, firm or corporation whose franchise or permit has been canceled *by the terms of this section* shall suffer any measurable damages as a result of . . . annexation." Former RCW 35A.14.900 (emphasis added). The terms of former RCW 35A.14.900 include the five-year adjustment period. We conclude that Dahl-Smyth's claim for "measurable damages" must be measurable and directly connected to the cancellation, but not necessarily fixed as of the annexation date.

The judgment of the trial court is reversed and the matter is remanded to the trial court for the entry of a damage award in conformity with this opinion.

SWEENEY and SCHULTHEIS, JJ., concur.

Review granted at 147 Wn.2d 1001 (2002).